### CHICAGO, R. I. & P. R. CO. v. REINHART et al.

No. 6444.—Opinion Filed June 20, 1916.

Rehearing Denied Oct. 10, 1916.

(160 Pac. 51.)

1. Carriers—Negligence—What Constitutes —Injuries to Passengers — "Actionable Negligence."

Three essential elements are necessary to constitute "actionable negligence" where the wrong is not willful and intentional, namely: (1) The existence of a duty upon the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; (3) injury to the plaintiff resulting from such failure. The evi-

dence in this case examined, and it is held that no evidence of primary negligence upon the part of the company is shown here.

**2. Master and Servant—Injury to Passenger—Negligence of Conductor—Verdict.**

Where the negligence complained of is primarily attributable to the agent and the responsibility of the principal is secondary in the sense that the principal has committed no wrong but under the law is accountable for the conduct of his agent, they both may be sued in a single action, but a verdict, exonerating the agent, must necessarily exonerate the principal, for the principal cannot be held responsible for an act of the agent if the agent has committed no tort."

(Syllabus by Hooker, C.)

Error from District Court, Atoka County; Robert M. Rainey, Judge.

Action by Robert L. Reinhart and another against the Chicago, Rock Island & Pacific Railway Company. Judgment against the railway company, and it brings error. Reversed and remanded.

R. J. Roberts, C. O. Blake, W. H. Moore, J. G. Gamble, K. W. Shartel, and J. G. Ralls, for plaintiff in error.

D. H. Linebaugh, for defendants in error.

Opinion by HOOKER, C. The evidence here introduced in conformity with the allegations of the petition discloses that on the 17th day of October, 1908, the plaintiff Reinhart boarded a combination train of the defendant company at Coalgate for the purpose of being transported as a passenger to Edwards, Okla., and upon entering the coach he paid to the conductor, one Hughes, his fare: that this train was the only train in operation that day between said points, and that when the train arrived at Wardville about 3 o'clock of that day the plaintiff inquired of the conductor, Hughes, how long the train would remain there, and if he would have time to go up to the business part of Wardville to obtain a lunch, and that the conductor informed him that the train would remain at Wardville for a period of 45 minutes, and, relying upon said statement, he alighted from said train, leaving his coat on the seat in the car which he had occupied, and started to the business portion of the town, which was about 250 yards from the depot; that the road leading from said train to the business part of the town is in the same general direction, but angles from the railroad: and that when he was about 150 yards from the coach the engine attached to the train gave two sharp blasts of the whistle, and the train started to move in the general direction of Edwards, and that the plaintiff, believing it was leaving Wardville, ran diagonally across lots for

the purpose of boarding said train; that when he approached the track he saw two employes of the company, one standing upon the top of a box car and the other upon the rear of the steps to the passenger coach attached to said train: that the plaintiff attempted to get on a box car in front of the passenger coach, and was thrown, but arose and made the second effort which resulted in his injuries. The evidence further discloses that the conductor Hughes was not upon the train at the time of the accident to the plaintiff, and that it was not the intention of those in charge of the train to remove the same from Wardville, but to back in upon a side track in order that a passenger train might pass at said place. This is what was done at that time and place. Under the allegations of the petition and under the instructions of the court this case was submitted to the jury solely upon the specific allegations of negligence as defined in instruction No. 9 which is as follows:

"Gentlemen of the jury, you are instructed that in this action the specific allegations of negligence recited in the plaintiff's petition control the general allegations, and the plaintiff must recover, if at all, upon the specific allegations therein contained. The court instructs you that the specific allegations of negligence are that the defendant company was negligent in not holding the train 45 minutes at Wardville, and that the employes of the company were negligent in leaving Wardville before the 45 minutes had expired. In this connection you are instructed that before the plaintiff can recover, you must find from the evidence that these specific acts of negligence must have occasioned the injury, and that these acts of negligence were the proximate cause of the injury."

It will thus be seen that it is claimed that the injuries received by the plaintiff were caused by the negligence of the defendant company and its employes in failing to hold said train at Wardville, where plaintiff alighted, a period of 45 minutes, as plaintiff was informed would be done, and the court, in its instruction aforesaid, told the jury that before they could find for the plaintiff, they must believe from the evidence that these specific acts of negligence occasioned the injury and were the proximate cause thereof. In other words, the jury must find from the evidence that the company and its employes failed to do what they informed the plaintiff they would do; that is, that they must find from the evidence that the conductor informed the plaintiff that the train would remain at Wardville for a period of 45 minutes, and they must further find from the evidence that it was the intention of the company and its employes to move said train therefrom at the time of the injury to the

plaintiff, and before the expiration of the aforesaid 45 minutes. The jury under this evidence were authorized to find that the conductor told the plaintiff that the train would remain at Wardville 45 minutes, but under this evidence the jury were not justified in finding that it was the intention of the company or its employes to remove the train from Wardville at the time of the injury, for all the evidence is to the contrary. The phyiscal facts demonstrate that this was not their intention. The conductor whose duty and business it was to manage the train was not on the train, as he would have been, had it intended to leave Wardville; in fact there is not any evidence that supports the theory of the plaintiff that the train intended to leave Wardville at this particular time, and the verdict of the jury, finding this to be true, is not based upon the evidence, but upon conjecture or suspicion, which is insufficient to sustain a verdict. See Ingram et al. v. Dunning, 60 Okla. 233, 159 Pac. 927.

The question which first presents itself in this case is whether there is any primary negligence upon the part of the company. This court has often said that to constitute actionable negligence, where the wrong is not wilful and intentional, three essential elements are necessary: (1) The existence of a duty upon the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; (3) injury to the plaintiff resulting from such failure.

In this case it must be held that, if the plaintiff here alighted from the train at Wardville for the purpose of obtaining a lunch some yards from the depot with the consent of the company and knowledge on the part of the conductor, the relation of carrier and passenger still existed between the plaintiff and the company here. That being true, the company owed to him the duty of protecting him in the movements of its train. When the train started to move from the depot at Wardville for the purpose of backing into the switch, the plaintiff was in a place of safety; neither the company nor its employes had any reason to anticipate that the plaintiff would leave a place of safety and voluntarily imperil himself by attempting to board a moving train when he had been informed that the train would not leave Wardville for 45 minutes. No duty to him was violated in the movement of that train, for he was then in no peril, and it could not have been assumed when the train started that he would subsequently place himself in that condition. It is and was a well-known fact that in the operation of trains of this character much switching and moving

of the train is required at the various stations along the line of railroad, and the plaintiff was at least as well presumed to know this fact as the railroad company was to anticipate that the plaintiff would imagine that the train was to depart from Wardville. As we view this record, we cannot see any evidence of primary negligence here.

If there be any negligence attributable to the company, the same is due to the fact that the conductor informed the plaintiff that the train would remain at Wardville 45 minutes, and that the conductor attempted to remove the same before the expiration of that period of time; and, under this theory of the case the negligence complained of is primarily attributable to the conductor in charge of the train. The railroad company itself is not charged with any specific act of omission or commission; the right of the plaintiff to recover being dependent solely upon the doctrine of respondeat superior. And it is said in the case of Chicago, R. I. & P. R. Co. v. Austin, 43 Okla. 698, 144 Pac. 1070.

"The rule seems to be that, for an injury caused by the negligence of an employe not directed or ratified by his employer, the employe is liable because he committed the act which caused the injury, while the employer is liable, not as if the act was done by himself, but because of the rule of law which holds the master responsible for the negligent act of his servant, committed while the servant is acting within the general scope of his employment, and engaged in his master's business."

In the case at bar the responsibility of Hughes is primary. He is responsible because he committed the wrongful or negligent act, that is, he informed the plaintiff that the train would remain at Wardville 45 minutes, and he directed the movement of the train as claimed by the plaintiff, which indicated that the train was leaving Wardville before the expiration of said time. The responsibility of the railroad company is secondary in the sense that it has committed, itself, no wrong, but under the law is held accountable for the conduct and act of its agent, and in the case of Bradley v. Rosenthal, 154 Cal. 420, 97 Pac. 875, 129 Am. St. Rep. 171, the Supreme Court of California said:

"While both may be sued in a single action, a verdict exonerating the agent must necessarily exonerate the principal, since the verdict exonerating the agent is a declaration that he has committed no wrong, and the principal cannot be responsible for the agent if the agent has committed no tort."

Also in N. O. & N. E. R. Co. v. Jones, 142 U. S. 18, 12 Sup. Ct. 109, 35 L. Ed. 919, it is said:

"If the immediate actor is free from re-

sponsibility because his act was lawful, can his employer, one taking no direct part in the transaction, be held responsible? Suppose we eliminate the employe, and assume a case in which the carrier has no servants, and himself does the work of carriage; should he assault and wound a passenger in the manner suggested by the instruction, it is undeniable that if sued as an individual he would be held free from responsibility, and the act adjudged lawful. Can it be that if he sued as a carrier for the same act a different rule obtains, and he be held liable? Has he broken his contract of carriage by an act which is lawful in itself, and which, as an individual, he was justified in doing? The question carries its own answer; and it may be generally affirmed that if an act of an employe be lawful, and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor."

In the case of Doremus v. Root, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649, the Supreme Court of Washington, said:

"Where a fireman was injured in a collision owing to a train conductor failing to obey his orders, and he sued the railroad and the conductor jointly, and a verdict was rendered against the railroad company, nothing being said about the conductor, and the court entered judgment in favor of the conductor, it was error to enter judgment against the railroad, since, if the conductor was not negligent, the railroad could not be liable, and the judgment in favor of the conductor operated as an estoppel in favor of the railroad."

See also, cases cited 43 Okla. 698, 144 Pac. 1070.

The record discloses in the instant case that the jury returned a verdict in favor of the defendant Hughes, who was the conductor in charge of the train in question, and whose acts, if any, constituted the negligence of the company, and that the jury at the same time returned a verdict against the company.

It was error to render a judgment against the company upon this verdict of the jury, and this cause is therefore reversed and remanded.

By the Court: It is so ordered.