REVA SWARTZ & others[1] *vs.* GENERAL MOTORS CORPORATION.[2]

Suffolk. April 5, 1978. — July 6, 1978.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Negligence*, Manufacturer of motor vehicle. *Motor Vehicle*, Defect. *Uniform Commercial Code*, Privity of contract, Warranty. *Sale*, Warranty.

This court declined to apply the doctrine of strict liability in tort, as set forth in Restatement (Second) of Torts § 402A (1965), to an action arising out of injuries suffered in an automobile accident in 1967, prior to the Legislature's prospective amendment of G. L. c. 106, § 2-318, to eliminate the requirement of privity of contract. [629-631]

Evidence in a product liability case, predicated on defective design of an automobile, was insufficient to show that a defect attributable to the manufacturer's negligence caused the plaintiffs' injuries. [631-633]

TORT. Writ in the Superior Court dated June 3, 1968.

The action was tried before *Morse*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Joseph G. Abromovitz* for the plaintiffs.

*Patrick F. Brady* for the defendant.

BRAUCHER, J. This is a product liability case, predicated on defective design of an automobile, arising out of a 1967

---

[1] Mary Cohen and Rose Sklar.

[2] The action was discontinued before trial as against the other defendant, Colonial Car Lease Co., Inc.

accident. We hold that there is no "strict liability in tort" apart from liability for breach of warranty under the Uniform Commercial Code, G. L. c. 106, §§ 2-314 — 2-318. We also affirm the action of the trial judge in directing a verdict for the defendant because there was no evidence that the defendant's negligence caused the accident.

On September 4, 1967, the plaintiff Sklar was driving an automobile manufactured by the defendant, General Motors Corporation. The plaintiff Cohen was a passenger. The car, a 1966 Buick Riviera, had been driven 20,448 miles when it collided with the house occupied by the plaintiff Swartz. All three plaintiffs were injured. They brought suit in 1968, and at trial in 1976 claimed that the accident resulted from malfunction of a "detent switch" connected to the accelerator. Claims for breach of warranty were waived by the plaintiffs. At the conclusion of the plaintiffs' opening statement the judge directed a verdict for the defendant on claims based on strict liability in tort. At the close of all the evidence he directed a verdict for the defendant on the issue of negligent design. Later he denied a motion for new trial, and the plaintiffs appealed. We allowed their application for direct appellate review.

1. *Strict liability in tort.* The plaintiffs urge us to follow Restatement (Second) of Torts § 402 A (1965).[3] That propos-

---

[3] "§ 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

"Caveat:

"The Institute expresses no opinion as to whether the rules stated in this Section may not apply

al requires consideration of legislative developments. In the reporter's notes to § 402A, Massachusetts is listed as one of the jurisdictions which "still reject the rule stated in this Section, even as to food." In addition to the cases there cited, see *Haley* v. *Allied Chem. Corp.*, 353 Mass. 325, 331 (1967), where it was pointed out that the Uniform Commercial Code, G. L. c. 106, § 2-318, at that time dispensed with the requirement of privity of contract only in the case of a natural person who is in the family or household of the buyer or a guest. In *Necktas* v. *General Motors Corp.*, 357 Mass. 546, 549 (1970), a majority of the court rejected a claim similar to the present one.

In 1971 § 2-318 was amended to eliminate the requirement of privity of contract. St. 1971, c. 670, § 1. In 1973, the section was extended to lessors, and the defense of failure to give notice was limited to cases where the defendant proved prejudice. St. 1973, c. 750, § 1. That amendment, together with a 1974 amendment, harmonized the statute of limitations with G. L. c. 260, §§ 2A and 4. St. 1974, c. 153. The result is to provide a remedy as comprehensive as that provided by § 402A of the Restatement,[4] a remedy not limited by the "Caveat" appended to § 402A. See *Back* v. *Wickes Corp.*, *post* 633, 639-640 (1978); *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct.      ,      (1978).[a]

---

"(1) to harm to persons other than users or consumers;

"(2) to the seller of a product expected to be processed or otherwise substantially changed before it reaches the user or consumer; or

"(3) to the seller of a component part of a product to be assembled."

[4] As amended, § 2-318 reads: "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. The manufacturer, seller, lessor or supplier may not exclude or limit the operation of this section. Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby. All actions under this section shall be commenced within three years next after the date the injury and damage occurs."

[a] 376 N.E.2d 143, 150 (1978).

Section 2-318 applies to leases which are made and to injuries which occur after the effective date of the 1973 amendment. St. 1973, c. 750, § 2. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 34-37 (1977). We need not now explore its application to injuries occurring from 1971 to 1973. It has no application to the present case, involving injuries suffered in 1967, since none of the plaintiffs bore the required relationship to the person who bought the car from the defendant.

But for the intervention of the Legislature, we should be inclined to reexamine the question whether our law ought to have continued to be out of harmony with the overwhelming weight of authority in other States. But the rule here in question has been revised by the Legislature with prospective effect. No sufficient reason appears for us to engage in retroactive revision of the law as it existed before 1971. Cf. *Higgins* v. *Emerson Hosp.*, 367 Mass. 714, 715-716 (1975) (charitable immunity); *Whitney* v. *Worcester*, 373 Mass. 208, 209-213 (1977) (sovereign immunity). We therefore decline to apply § 402A of the Restatement to the present case.

2. *Negligent design.* In denying the plaintiffs' motion for new trial, the judge stated the "evidence most favorable to the plaintiffs." We summarize that evidence, relying largely on his statement. The Buick was leased to the employer of the plaintiffs Sklar and Cohen. On the day of the accident Cohen was seated in the back, and the car was operated by Sklar. Sklar started the engine after having given the accelerator a "pump of gas." The engine roared, and the car went backward and then went forward at high speed. Sklar depressed the brake pedal to the floor, but the car did not stop. She looked down and saw the accelerator pedal on the floor. After traveling about 500 feet, the car struck the house occupied by the plaintiff Swartz. All the plaintiffs were injured.

The detent switch operates to "downshift" from the driving gear to a lower gear. When the accelerator is fully depressed, the detent switch is closed, and the downshift

occurs. Ordinarily, a return spring and the weight of the linkage operate to reopen the detent switch and to return the accelerator to the idle position. The detent switch was removed from the vehicle after the accident at the request of the plaintiffs' attorney. The person who removed it lost it and never tested it.

The plaintiffs' theory was and is that the accelerator was held in the open position by the detent switch, and that it was negligent to connect the detent switch to the carburetor control linkage. The detent switch froze in the closed position, according to this theory, and the result was that the accelerator was also frozen in the open position and that the vehicle became uncontrollable. That result could have been avoided, it is claimed, if the detent switch functioned independently of the carburetor control linkage.

There was no direct evidence that the detent switch was ever closed on the day of the accident. The jury could have found that it was closed only by inferring that the plaintiff Sklar was mistaken either in her testimony that she pushed the gas pedal down "just a little" or in her testimony that later she had pushed to the floor the brake pedal rather than the accelerator pedal. Several other possible causes of the open throttle were negated by expert testimony. A photograph taken after the accident shows the detent switch in the open position. On the basis of a laboratory experiment with a similar detent switch, an expert witness for the plaintiffs testified that in his opinion the gas pedal became stuck because the detent switch became stuck.

The judge ruled that the expert's testimony was insufficient because he had not tested the amount of force required to "unstick" the detent switch. Hence he could not and did not testify that the sticking would be sufficient to overcome the force of the return spring and the weight of the linkage. In the absence of such testimony, the judge said, the expert had shown a possibility rather than a probability of improper design. Hence a verdict for the plaintiffs would rest on speculation.

We agree. We assume, without deciding, that the conclusion of causal relation may be justified if "as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result." *Necktas* v. *General Motors Corp.*, 357 Mass. 546, 551 (1970) (Spiegel, J., dissenting). But elimination of the privity of contract requirement does not relieve the plaintiffs of the burden of showing that a defect attributable to the manufacturer's negligence caused their injuries. *Smith* v. *Ariens Co.*, ante 620, 626-627 (1978). *Coyne* v. *John S. Tilley Co.*, 368 Mass. 230, 234 (1975). *Carney* v. *Bereault*, 348 Mass. 502, 506-507 (1965). A verdict may not be based on conjecture and surmise, and expert opinion does not help if it is demonstrated that it rests on speculation. *Maher* v. *General Motors Corp.*, 370 Mass. 231, 234 (1976). *Currie* v. *Lee Equip. Corp.*, 362 Mass. 765, 768 (1973). See *Omni Flying Club, Inc.* v. *Cessna Aircraft Co.*, 366 Mass. 154, 161 (1974); *LeBlanc* v. *Ford Motor Co.*, 346 Mass. 225, 231 (1963).

*Judgment affirmed.*