LESLIE F. ULOTH, JR. *vs.* CITY TANK CORPORATION & another.[1]

Suffolk. September 11, 1978. — December 21, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Negligence*, Manufacturer, Refuse collection device, Assumption of
risk. *Verdict*, General verdict.

In a negligence action against the designer and manufacturer of a
refuse body, the fact that the refuse body functioned as intended did
not preclude a finding that the body was negligently designed. [877-
879]
In a negligence action against the designer and manufacturer of a
refuse body, the fact that the dangers of the machine were obvious
and that the defendants did not negligently fail to warn of the
dangers did not preclude a finding that the refuse body was negli-
gently designed. [879-881]
Evidence in a negligence action did not require a ruling of law that the
plaintiff, who suffered from a learning disability and had limited
experience with machinery, had assumed the risk of injury while
working on a refuse body. [882]
In a negligence action against the designer and manufacturer of a
refuse body, the manufacturer could not claim for the first time on
appeal that its motions for a directed verdict and for judgment
notwithstanding the verdict should have been granted because
there was no evidence that it participated in the design of the refuse
body. [882-883]
In an action against the manufacturer of a refuse body alleging negli-
gent design, where all parties conceded that the packer blade of the
refuse body was the cause of the plaintiff's injury and there was no
suggestion that the distributor of the body had altered the design
of the packer blade, there was no intervening act relieving the
manufacturer of responsibility for the negligent design. [883]

---

[1] Old Dominion Manufacturing Co., Inc. A third defendant, Casey &
Dupuis Equipment Corp., filed an appeal which was voluntarily dis-
missed.

In a negligence action against the designer of a refuse body, there was
no error in allowing the plaintiff's expert to express his opinion that
the refuse body was unreasonably and dangerously designed be-
cause available safety devices which would have substantially re-
duced the danger of the machine were not included in the design.
[884]

In a negligence action, the failure of the defendants to raise an alleged
inconsistency between the jury's answers to interrogatories and the
general verdicts prior to dismissal of the jury precluded their rais-
ing such an inconsistency on appeal. [884-885]

TORT. Writ in the Superior Court dated January 12,
1972.

The action was tried before *McNaught*, J.

The Supreme Judicial Court granted a request for di-
rect appellate review.

*Richard K. Donahue* for the defendants.

*Cynthia J. Cohen* (*Philander S. Ratzkoff* with her) for
the plaintiff.

ABRAMS, J. On October 14, 1970, Leslie F. Uloth, Jr., an
employee of the town of Amesbury, lost his foot while
working on a Loadmaster Model LM 316 refuse body.
Uloth sought damages against City Tank Corporation
(City Tank) and from Old Dominion Manufacturing Co.,
Inc. (Old Dominion), for negligence, breach of warranty,
and strict liability in tort.[2] The issues argued by the de-
fendants on appeal are that it was error for the trial judge
to deny their motions for directed verdicts on the negli-
gence counts, or, alternatively, their motions for judg-
ments notwithstanding the verdicts. See Mass. R. Civ. P.
50 (b), 365 Mass. 814 (1974); *Smith* v. *Ariens Co.*, 375 Mass.
620, 629 (1978). We affirm the judgments for Uloth on the
negligence counts.[3]

---

[2] The judge directed verdicts for the defendants on breach of war-
ranty and strict liability.

[3] We do not reach Uloth's cross appeal from the directed verdicts on
strict liability in view of our opinion in *Swartz* v. *General Motors Corp.*,
375 Mass. 628, 630 (1978).

In evaluating the judge's refusal to direct verdicts for City Tank and Old Dominion on negligence, we of course adopt the view of the evidence most favorable to Uloth. *Everett* v. *Bucky Warren, Inc., ante,* 280, 282 (1978). We must determine whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972).

Uloth was injured while working on the Loadmaster 316, a refuse body designed and manufactured by City Tank and Old Dominion. The refuse body had been installed on a used truck chassis supplied by Uloth's employer, the town of Amesbury, and was used for collecting trash.

The Loadmaster 316 was designed as follows. Running the full width of the truck is a rear step on which the workers ride between stops. The step is approximately two feet from the ground. Twelve inches above the step is a loading sill four inches wide. Just beyond the sill is a "trash hopper" area into which the trash is loaded. A packer blade sweeps through this trash hopper area during the compaction cycle, and pushes the trash into the storage area of the truck. Where the blade meets the loading sill, it creates a shear point where the blade acts like scissors.

The compaction cycle on the Loadmaster 316 is activated by placing the truck in neutral, operating several switches in the cab, and pulling a lever on the side of the truck. The packer blade then descends, reaching the shear point in eleven seconds. The blade returns to its original position and stops. The compaction cycle can be interrupted at any time by disengaging the lever at the side of the truck. Engine noise increases during the cycle.

In Amesbury, two loaders and a driver were customarily sent with the truck, and an effort was made to match an inexperienced loader with one more familiar with the

operation. Though the compaction cycle could not occur while the truck was in gear, workers in Amesbury rode on the rear step during the compaction cycle while the truck coasted downhill to the next stop.

Uloth, aged forty-four at the time of the accident, was employed by the town of Amesbury as a general laborer. He had helped with trash collection on several occasions prior to the accident, and on two of those occasions he had worked on the Loadmaster 316. On the day of the accident one of the regular crew members of the Loadmaster 316 became ill, and Uloth volunteered to fill in for him. The laborer working with Uloth had been on the job for one week, and Uloth was given the responsibility for operating the hydraulic packing unit on the back of the truck.

Uloth operated the lever once without incident. Then, ten minutes after starting work, Uloth signalled the driver to put the truck in neutral and activate the switches in the cab. When this was done, Uloth operated the lever on the side of the truck and lit a cigarette. When he heard the engine noise increase and saw the truck move a little, Uloth assumed that the truck was about to move ahead, and leaped onto the rear step of the truck. He lost his balance, his left foot went toward the loading sill, and the descending panel caught his left foot and dragged it into the trash hopper. Uloth's foot was severed from his leg.

City Tank and Old Dominion argue that the judge erred in denying their motions for directed verdicts and for judgments notwithstanding the verdicts on the issue of design negligence. They assert that, in order to establish design negligence, Uloth had to prove that the Loadmaster 316 did not function as intended. They contend that the Loadmaster 316 functioned precisely as intended, and, therefore, as matter of law, was not negligently designed. City Tank and Old Dominion read *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 173 (1977), as compelling such a result.

We do not read *Schaeffer* as establishing a rule that a product which functions as intended may not be negligently designed. A designer has a duty "to design the machine with reasonable care." *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 782 (1975). Restatement (Second) of Torts § 398 (1965). In *Schaeffer*, the "testimony of the plaintiff's expert did not raise an issue of fact regarding a design defect making the differential unsafe for its intended use." *Schaeffer, supra. Schaeffer* did not offer proof that the differential could have been designed to perform the same function in a safer fashion. In this case Uloth did present evidence of several design changes which would have reduced the danger of the Loadmaster 316 without significant reduction in the efficiency of the machine;[4] thus *Schaeffer* does not govern the outcome of Uloth's case.

In our view the focus in design negligence cases is not on how the product is meant to function, but on whether the product is designed with reasonable care to eliminate avoidable dangers. See Marschall, An Obvious Wrong Does Not Make a Right: Manufacturers' Liability for Patently Dangerous Products, 48 N.Y.U.L. Rev. 1065, 1077 (1973).

We reject the suggestion that we adopt a rule that design negligence turn solely on whether a product functions as intended. Such a rule would mean that there would be no liability for negligent design of a product which functioned as intended but which was designed in a fashion more dangerous than need be. Liability, how-

---

[4] Uloth presented testimony of numerous available safety devices. The devices were known to City Tank and Old Dominion, and any one of them would have reduced the danger of the shear point. These devices included side steps for the workers, interlocking hopper doors, a stop bar, an interrupted cycle, or a "dead man control" on the lever which activates the compaction cycle. Several of these devices were being used by other companies when the Loadmaster 316 was designed. While the effectiveness of the devices was questioned by the defendants' witnesses, conflicting evidence is a jury question.

ever, would be imposed on a designer who tried to reduce the risk by designing and using safety features which for some reason did not function as intended. Such a rule would discourage designers from attempting to reduce the hazards from machinery. We do not think such a rule is a practical solution to the problems posed by design negligence in product liability cases.

City Tank and Old Dominion next argue that a designer's primary obligation is to warn of the dangers of his product. They assert that a designer may reasonably expect a user to heed a warning and avoid injury. Moreover, they claim that there is no duty to warn of an obvious danger, for there is adequate warning implicit in the obviousness of the danger. City Tank and Old Dominion point out that the dangers of the shear point on the Loadmaster 316 were obvious, and that the jury found they did not negligently fail to warn of the dangers of the machine. Thus, they conclude that the judge should have granted their motions for directed verdicts or judgments notwithstanding the verdicts. City Tank and Old Dominion ask us to adopt a rule that there can be no negligent design if the danger is obvious or if adequate warnings are given.[5]

An adequate warning may reduce the likelihood of injury to the user of a product in some cases. We decline, however, to adopt any rule which permits a manufacturer or designer to discharge its total responsibility to workers by simply warning of the dangers of a product. Whether or not adequate warnings are given is a factor to be

_____

[5] City Tank and Old Dominion disclaim any reliance on *Campo* v. *Scofield*, 301 N.Y. 468 (1950), overruled in *Micallef* v. *Miehle Co.*, 39 N.Y.2d 376 (1976), although City Tank cited *Campo* in its motion for a directed verdict (noting that it had been overruled). *Campo* held that a complaint alleging negligent design must allege and prove existence of a latent defect in order to permit a plaintiff to recover. To the extent that the *Campo* doctrine is the logical extension of arguments advanced by City Tank and Old Dominion, we reject that approach. See Rheingold, The Expanding Liability of the Product Supplier: A Primer, 2 Hofstra L. Rev. 521, 541 (1974).

considered on the issue of negligence, but warnings cannot absolve the manufacturer or designer of all responsibility for the safety of the product. However, in some circumstances a warning may not reduce the likelihood of injury. For example, where the danger is obvious, a warning may be superfluous. A designer may have no duty to warn of such dangers. 1 L.R. Frumer & M. I. Friedman, Products Liability § 8.04, at 182 (1978). Darling, The Patent Danger Rule: An Analysis and a Survey of its Vitality, 29 Mercer L. Rev. 583, 589 (1978).

Moreover, a user may not have a real alternative to using a dangerous product, as where a worker must either work on a dangerous machine or leave his job. *Davis* v. *Fox River Tractor Co.*, 518 F.2d 481, 485 (10th Cir. 1975). See *Pike* v. *Frank G. Hough Co.*, 2 Cal. 3d 465, 473 (1970). Further, a warning is not effective in eliminating injuries due to instinctual reactions, momentary inadvertence, or forgetfulness on the part of a worker.[6] One of the primary purposes of safety devices is to guard against such foreseeable situations. Twerski, Weinstein, Donaher & Piehler, The Use and Abuse of Warnings in Products Liability—Design Defect Litigation Comes of Age, 61 Cornell L. Rev. 495, 509 (1976).

Balanced against the somewhat limited effectiveness of warnings is the designer's ability to anticipate and protect against possible injuries. If a slight change in design would prevent serious, perhaps fatal, injury, the designer may not avoid liability by simply warning of the possible injury. We think that in such a case the burden to prevent needless injury is best placed on the designer or manufacturer rather than on the individual user of a product. "In

---

[6] Such momentary, foreseeable lapses must be distinguished from conduct which is careless or consciously reckless. A worker or other user of a potentially dangerous product is not freed of responsibility to exercise due care in the use of the product. Accident prevention requires a combination of responsible, diligent effort by the user and safe design of products. Cf. *Secretary* v. *Clements Paper Co.*, 1 OSAHRC 574, 586 (1972) (employee required to exercise care for his own safety).

today's world, it is often only the manufacturer who can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose. . . . A casting of increased responsibility upon the manufacturer, who stands in a superior position to recognize and cure defects, for improper conduct in the placement of finished products into the channels of commerce furthers the public interest." *Micallef* v. *Miehle Co.*, 39 N.Y.2d 376, 385 (1976). *Bexiga* v. *Havir Mfg. Corp.*, 60 N.J. 402, 410 (1972). 2 F. Harper & F. James, Torts § 28.5, at 1544 (1956). Rheingold, The Expanding Liability of the Product Supplier: A Primer, 2 Hofstra L. Rev. 521, 539, 541 (1974).

We reject any inflexible rule that negligent design of an obviously dangerous product precludes finding a manufacturer or a designer liable. "The manufacturer of the obviously defective product ought not to escape because the product was obviously a bad one. The law, we think, ought to discourage misdesign rather than encouraging it in its obvious form." *Palmer* v. *Massey-Ferguson, Inc.*, 3 Wash. App. 508, 517 (1970).

In sum, the judge correctly denied City Tank and Old Dominion's motions for directed verdicts. We decline to hold that there can be no negligence in design if the product performs as intended, or if there are warnings found to be adequate, or if the dangers are obvious. We hold that these factors should be considered by a jury in evaluating a claim of design negligence. But there is a case for the jury if the plaintiff can show an available design modification which would reduce the risk without undue cost or interference with the performance of the machinery. 2F. Harper & F. James, Torts § 28.5, at 1543 (1956). Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816, 876 (1962). Cf. *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 632 (1978) (plaintiff's expert showed a possibility rather than a probability of improper design).

City Tank and Old Dominion also argue that their motions for directed verdicts and for judgments notwithstanding the verdicts should have been allowed because Uloth assumed the risk as matter of law.[7] Rarely, if ever, can it be said that a plaintiff has assumed the risk as matter of law. *Halley* v. *Hugh Nawn, Inc.*, 356 Mass. 28, 30 (1969). *Stewart* v. *Roy Bros.*, 358 Mass. 446, 453 (1970). Restatement (Second) of Torts § 496D & Comment e (1965). Assumption of the risk is determined on a subjective basis, concentrating on whether the particular plaintiff knew and appreciated the risk involved. A plaintiff's intelligence and experience are relevant considerations. W. Prosser, Torts § 68, at 447 (4th ed. 1971). *Everett* v. *Bucky Warren, Inc.*, *ante*, 280, 288-289 (1978) (applying Rhode Island law).

We view the testimony in the light most favorable to the plaintiff. Uloth suffered from a learning disability. He was a slow learner, and had completed the eighth grade in school. Uloth had limited experience with machinery and before the day of the accident he had never operated the Loadmaster 316 lever to activate the packer panel. Moreover, Uloth himself had never received any instructions for warnings concerning the packer panel. Although his testimony concerning his awareness of the danger of the packer panel was contradictory, resolution of conflicting testimony is the jury's function. *Baldassari* v. *Produce Terminal Realty Corp.*, 361 Mass. 738, 745 (1972). *Donovan* v. *Johnson*, 301 Mass. 12, 13 (1938). We cannot conclude as matter of law that Uloth assumed the risk of injury.

Old Dominion claims that there was no evidence that it participated in the design of the Loadmaster 316. However, Old Dominion never advanced this argument at

---

[7] Uloth's accident occurred on October 14, 1970, so it is not affected by G. L. c. 231, § 85, as amended by St. 1973, c. 1123, which abolished assumption of the risk as a defense in cases arising out of accidents occurring after January 1, 1974.

trial. The argument was not raised in its motion for a directed verdict and judgment notwithstanding the verdict.[8] A party who advances one theory as the basis for his motion for a directed verdict in the trial court cannot as of right challenge the denial of that motion on a different theory on appeal.[9] *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956). *Moy* v. *Jack Madden Ford Sales, Inc.*, 4 Mass. App. Ct. 102, 108 (1976). J. W. Smith & H. B. Zobel, Rules Practice § 50.09, at 206 (1977). *Randolph* v. *Employers Mut. Liab. Ins. Co.*, 260 F.2d 461, 465 (8th Cir. 1958), cert. denied sub nom. *Randolph* v. *Stokes*, 359 U.S. 909 (1959).

Old Dominion suggests one final ground in support of its motion for a directed verdict. It claims that Uloth's injury resulted from the intervening negligence of the company which distributed the Loadmaster 316. This argument was not raised below. Thus we are not required to reach it. See *Lee* v. *Allied Sports Assocs.*, 349 Mass. 544, 552 (1965). We are, however, able to determine that there was evidence from which the jury could have found that Old Dominion's negligent design caused the accident. Uloth's expert stated his opinion that the negligent design of the truck caused the accident. All parties conceded that the packer blade was the cause of Uloth's injury and there is no suggestion that the distributor had altered the design of the packer blade. Thus the record reveals no

[8] City Tank, in its motion for a directed verdict at the close of Uloth's case, did argue that there was no evidence that it participated in the design. However, City Tank has not argued that issue on appeal.

[9] We are unable to determine whether or not City Tank and Old Dominion were sufficiently intermingled and had a sufficient disregard for their separate corporate entities to warrant imposition of liability on Old Dominion for negligent design by City Tank. See *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968). There was some evidence that Old Dominion and City Tank are wholly owned subsidiaries of the same parent corporation and that the vice president of City Tank was an officer of Old Dominion and of the parent company. Additionally, one individual signed answers to requests for admissions of fact on behalf of both City Tank and Old Dominion.

intervening act relieving Old Dominion of responsibility for the negligent design. See *Smith* v. *Ariens Co.*, 375 Mass. 620, 626-627 (1978).

City Tank contends that the judge erred in denying its motion to strike the testimony of Uloth's expert.[10] City Tank stated no specific ground at trial for its motion to strike (see Mass. R. Civ. P. 46, 365 Mass. 811 [1974]). A general objection may be overruled if the testimony objected to is admissible for any purpose. *Stitt* v. *Tribe*, 270 Mass. 204, 206 (1930). W.B. Leach & P.J. Liacos, Massachusetts Evidence 71 (4th ed. 1976). The plaintiff's expert expressed an opinion that the Loadmaster 316 was unreasonably and dangerously designed because available safety devices which would have substantially reduced the danger of the machine were not included in the design of the machine. We think such evidence admissible to establish negligent design and that there was no error in the judge's denial of City Tank's motion to strike.

Both City Tank and Old Dominion claim the judge erred in entering judgments on the general verdicts, which they claim were inconsistent with the jury's answers to interrogatories submitted under Mass. R. Civ. P. 49 (b), 365 Mass. 812 (1974). Rule 49 (b) clearly contemplates a motion raising the inconsistency between the answers and the general verdicts before the dismissal of the jury. *McCue* v. *Prudential Ins. Co.*, 371 Mass. 659, 663 (1976). *Stancill* v. *McKenzie Tank Lines, Inc.*, 497 F.2d 529, 533-535 (5th Cir. 1974). Since City Tank and Old Dominion made no such motion at that time, they may not now argue the inconsistency on appeal. Moreover, if they had preserved their rights the result would not differ. The claim is that the general verdicts were inconsistent with the jury's special finding that there was no negli-

[10] This argument is clearly not addressed to the denial of City Tank's motion for a directed verdict or judgment notwithstanding the verdict. Although City Tank does not request review of the judge's denial of its motion for a new trial, we consider the argument on that issue.

gent failure to warn. However, the general verdicts were consistent with the jury's finding of negligent design, a basis of recovery independent of the duty to warn.

We conclude that there was no error in the judge's denial of City Tank and Old Dominion's motions for directed verdicts, for judgments notwithstanding the verdicts, or for a new trial.

*Judgments affirmed.*