**Vivian Aline BRADEN, Appellant,**

v.

**Don HENDRICKS, d/b/a D & L Ford Company and Ford Motor Company, Appellees.**

**No. 53962.**

Supreme Court of Oklahoma.

Feb. 19, 1985.

---

Dale J. Briggs, Briggs, Patterson, Eaton & Berg, Tulsa, for appellant.

William C. Anderson, William H. Hinkle, Doerner, Stuart, Saunders, Daniel & Anderson; William S. Hall, Feldman, Hall, Frandon & Woodard, Tulsa, for appellees.

OPALA, Justice.

Four questions are presented on certiorari: (1) Was there prejudicial error in the trial court's granting defendant-manufacturer's motion in limine? (2) Did the trial court reversibly err in disallowing, on cross-examination, an inquiry into the salary of the manufacturer's witness-employee whose opinion testimony was sought to be impeached for bias? (3) Did the trial court's Instruction No. 4 constitute reversible error? and (4) Was the Court of Appeals' reversal of the trial court's judgment on the defendant-dealer's [dealer] demurrer to the evidence legally correct? We answer all four questions in the negative.

The plaintiff, Vivian Braden [motorist], was involved in a one-car accident. She claimed that the steering wheel of her 1974 Ford LTD station wagon locked as she drove to work, causing her to run off the road and resulting in an injury to her person as well as damage to the automobile. The motorist brought a products liability action against the manufacturer of the car, Ford Motor Co. [Ford], and the dealer, Don Hendricks, d/b/a D & L Ford Co., from whom she purchased it. The trial court rendered judgment for the dealer on his demurrer to the evidence, and the jury returned a verdict for Ford. The Court of Appeals held that (a) the trial court improperly limited cross-examination when it disallowed the motorist to inquire into the salary of Ford's witness-employee and into an alleged indemnity agreement between Ford and the dealer; (b) the instruction that advised the jury to consider the age and prior use of the car in determining whether a defect existed in the station wagon when it was bought gave improper emphasis to Ford's evidence and (c) there was error in rendering judgment on the dealer's demurrer to the evidence.

## I

## ATTEMPTED IMPEACHMENT FOR BIAS OF THE MANUFACTURER'S WITNESS–EMPLOYEE

The motorist contends that she was improperly precluded from inquiring into the salary of Ford's witness-employee. She asserts that the amount of the salary the witness was receiving for his services was proper cross-examination to affect his credibility.

The motorist sought to impeach the testimony of Ford's witness for the purpose of showing bias in favor of Ford or interest in the outcome of the litigation. The Oklahoma Evidence Code [Code][1] does not expressly address impeachment for bias or interest.[2] Only a few aspects of the witness' impeachment rules are governed by that statute.[3] Because the omission leaves the common law unaltered by the Code, we must look to the former for guidance in determining whether the trial court erred in limiting the scope of attempted cross-examination into the bias or interest of the manufacturer's witness.[4]

At common law a witness' credibility may be affected by showing bias,

1. 12 O.S. 1981 §§ 2101 et seq. The Code, enacted in 1978 (Okl.Sess.L.1978, c. 285), became effective October 1 of that year. Because its effective date occurred approximately six weeks before the trial of the instant case, the Code is applicable to this appeal.

2. The United States Supreme Court has recognized the very same omission in the Federal Rules of Evidence. *United States v. Abel,* —— U.S. ——, 105 S.Ct. 465, 468, 83 L.Ed.2d 450 [1984]. It noted that some commentators treated bias as a basis for impeachment under the Federal Rules without mentioning the omission, while another commentator observed that the Federal Rules, though silent as to impeachment for bias, clearly do contemplate the use of bias as a ground of impeachment. The Court's opinion adopts the latter view.

3. The applicable statutes are 12 O.S. 1981 §§ 2607 through 2609. Sec. 2607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." Section 2608 pertains to the admissibility of evidence as to the conduct and character of a witness. Section 2609 deals with impeachment by evidence of conviction of a crime.

4. The terms of 12 O.S. 1981 § 2 provide: "The common law, as modified by constitutional and statutory law, judicial decisions and the

corruption and interest.[5] The law recognizes that a relationship between a party and a witness might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. The term "bias" signifies a witness' interest in the outcome of the case, including friendly or hostile association with one of the parties which could induce him to distort or falsify his testimony.[6] Bias can be exposed by showing the witness' relationship to the case, his financial interest in the outcome, or his association with one of the parties. For instance, potential prejudice may be demonstrated by showing that the witness is employed by a party or has an economic stake in the outcome of the litigation.[7] The impeaching party is not confined to matters elicited on direct examination. Its inquiry to test a witness' credibility may extend to matters beyond the scope of direct examination.[8]

The trial court restricted the attempted cross-examination by disallowing inquiry into the amount of the witness' salary. An offer of proof discloses that his annual compensation was $100,000. Although the exact amount of the employee's salary was kept from the jury by the trial judge's ruling, there was other evidence affecting the witness' credibility: the witness (a) was a parts and service zone manager for Ford, (b) had worked for Ford for almost twenty-one years, (c) believed that Ford was a good employer, (d) had never offered testimony that Ford made a defective product and (e) conceded on cross-examination that

he would like to help Ford win the instant lawsuit.

■ While the salary paid a witness by a party may be shown to affect the witness' credibility, we believe that the trial court did not, in this case, commit a reversible error by limiting the inquiry. This is so because the motorist had been afforded ample opportunity to establish bias by reason of the other facts and circumstances elicited without any court interference. We conclude that, on the record before us, no prejudice appears to have resulted from the trial judge's objectionable restriction of the motorist's attempted inquiry. In short, the limitation improperly placed upon cross-examination was clearly harmless.[9]

## II

## THE IN LIMINE RULING

The motorist asserts that the trial court erred in granting Ford's motion in limine. By this motion the motorist was precluded from cross-examining any of Ford's witnesses about an alleged indemnity agreement between Ford and the dealer. Ford contends that the motorist has failed to preserve this error on appeal because her counsel did not, at trial, make an offer of proof as to the testimony sought to be elicited about the alleged agreement.

■ A motion in limine is generally a pretrial device used to preclude prejudicial statements and questions which have no proper bearing on the issues in the case and which, if heard by the jury, would

---

condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

**5.** 3A Wigmore, Evidence (Chadbourn rev.) §§ 943–969, pp. 777–820 [1970]; McCormick on Evidence § 40, pp. 78–81 [1972].

**6.** 3A Wigmore, *supra* note 5 at § 945 p. 782.

**7.** 3A Wigmore, *supra* note 5 at § 949 pp. 784–788; McCormick, *supra* note 5 at § 40 pp. 78–79; *Frierson v. Hines,* Okl., 426 P.2d 362, 364

[1967]; *Rhoades v. Young,* Okl., 479 P.2d 570, 572 [1971]; *Independent School District No. 1 of Tulsa County v. Albus,* Okl., 572 P.2d 554, 558 [1977].

**8.** *Bewley v. State,* Okl.Cr., 404 P.2d 39, 41 [1965]; *Frierson v. Hines, supra* note 7; *Rhoades v. Young, supra* note 7; *Soap v. State,* Okl.Cr., 562 P.2d 889, 894 [1977].

**9.** The terms of 12 O.S.1981 § 78 provide:
"The court, in every stage of action, must disregard any error or defect in pleadings or proceedings which does not affect the substantial rights of the adverse party; *and no judgment shall be reversed or affected by reason of such error or defect.*" [emphasis ours]

interfere with a fair and impartial trial.[10] Used in its broadest sense, "in limine" means *any* motion, whether used *before* or *during* trial, by which exclusion is sought of anticipated prejudicial evidence.[11] If the evidence is excluded by an in limine ruling, the party seeking to introduce it must at trial—out of the hearing of the jury—make an offer to show for the record the essence of testimony sought to be elicited. In this manner the trial court is afforded an opportunity to make its in-trial ruling upon the issue in contention.[12]

[redacted] The motorist apparently discovered the existence of the alleged indemnity agreement *after* the trial had begun. This discovery no doubt precipitated an *in camera* discussion—not stenographically reported, or if reported, not made a part of the appellate record—during which the motion in limine was made to the court. The trial court addressed Ford's motion when the motorist rested her case. She opposed the motion on the ground that she could inquire on cross-examination as to "matters that affect credibility". The motion was granted. After this ruling, the motorist made no offer of testimony she expected to elicit on cross-examination. No explanation was tendered as to how the existence of the agreement, or any of its terms, would affect the credibility of Ford's witnesses. It was incumbent upon the motorist to make an offer of proof in order to preserve the error for our review.[13]

[redacted] Assuming that the issue were properly preserved, the exclusion of testimony about the indemnity agreement was nonetheless, on this record, free from reversible error.[14] While Oklahoma's jurisprudence does not have a statutorily unrestricted right of contribution among joint tortfeasors,[15] it does recognize a right of indemnity when one—who was only *constructively* liable to the injured party and was in no manner responsible for the harm—is compelled to pay damages because of the tortious act by another.[16] The indemnity agreement was merely Ford's recognition of its noncontractual obligation, created by law, to indemnify its dealer

10. *Tahdooahnippah v. State,* Okl.Cr., 610 P.2d 808, 810 [1980]; *Nealy v. State,* Okl.Cr., 636 P.2d 378, 381 [1981]; *Teegarden v. State,* Okl.Cr., 563 P.2d 660, 662 [1977]; *Bowman v. State,* Okl.Cr., 585 P.2d 1373, 1377 [1978].

11. *Luce v. United States,* — U.S. —, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 [1984].

12. *Nealy v. State, supra* note 10; *Bowman v. State, supra* note 10; *Teegarden v. State, supra* note 10.

13. *Teegarden v. State, supra* note 10 at 662.

14. The motorist's reliance on *Cox v. Kelsey-Hayes Co.,* Okl., 594 P.2d 354 [1979], for the proposition that the evidence of the indemnity agreement must be admitted because it tends to show bias, is misplaced. *Cox* involved an agreement between a plaintiff and one of multiple defendants, a so-called "Mary Carter" agreement. This type of agreement generally includes (a) secrecy, (2) a guarantee from the defendant to the plaintiff that the plaintiff will realize a certain monetary recovery, (3) a formula that provides the defendant's liability will decrease in direct proportion to the increase in the non-agreeing defendants' liability and (4) a provision for keeping the agreeing defendant in the lawsuit. *Cox, supra* at 357. By its nature, a Mary Carter agreement undermines the adversary system by giving one defendant a vested interest in as large a settlement as possible to the detriment of the other defendants. Its existence must be disclosed through cross-examination to preserve a fair trial for the non-agreeing defendants. *Cox, supra* at 358. The same reasoning does not hold true of an indemnity agreement between parties on the same side of the lawsuit.

15. *Porter v. Norton-Stuart Pontiac-Cadillac of Enid,* Okl., 405 P.2d 109, 113 [1965]; *Cain v. Quannah Light & Ice Co.,* 131 Okl. 25, 267 P. 641, 644 [1928]; see also *Burrell v. Rodgers,* 441 F.Supp. 275, 278 [D.C.Okl.1977]; *Rose v. Chicago, R.I. & P.R. Co.,* 308 F.Supp. 1357, 3160 [D.C. Okl.1970]. *But see the statutory change in 12 O.S.1981 § 832.*

16. *Porter v. Norton-Stuart Pontiac-Cadillac of Enid, supra* note 23; *Cain v. Quannah Light & Ice Co., supra* note 23; *State Ins. Fund v. Taron,* Okl., 333 P.2d 508, 512 [1958]; see also *Peak Drilling Co. v. Halliburton Oil Well Cementing Co.,* 215 F.2d 368, 369 [10th Cir.1954]; *United States v. Acord,* 209 F.2d 709, 714 [10th Cir. 1954]; *Calvery v. Peak Drilling Co.,* 118 F.Supp. 335, 337 [D.C.Okl.1954]. The common-law right of indemnity recognized in these decisions stands preserved by the terms of 12 O.S.1981 § 832(F).

upon a claim for loss stemming from Ford's liability for harm caused by its defective product.[17]

 In a strict liability action it is immaterial to the plaintiff's case that the defect in the product was not caused by the distributor. The liability of the manufacturer and distributor is co-extensive, even though the distributor was not responsible for the presence of the defect. Because a contract of indemnity which merely formalizes the manufacturer's implied obligation to the distributor would not have tendered an issue of any consequence, its exclusion clearly was harmless.[18]

### III

### THE MOTORIST'S CLAIM TO ERROR IN INSTRUCTION NO. 4

The motorist contends that Instruction No. 4 was prejudicial because it placed too much emphasis on Ford's evidence in support of its theory of defense. Instruction No. 4 charges:

"You are entitled to consider that the automobile in question was in use from August 21, 1974, to January 25, 1976, with over 19,500 miles thereon as to whether there was a defect in said automobile at the time the defendants sold it to plaintiff."

The Court of Appeals agreed with the motorist. It held that the quoted instruction constituted reversible error.

 We cannot accede to the argument that the objectionable charge gave undue prominence to, and tended to overfocus upon, but a single aspect of the evidence in the case. Nor does it appear that it tended to eclipse the motorist's own claim. Rather, as we view the instruction, its vice, if any it have, does not lie in the text, but entirely in the sequential order in which it stood placed among the trial court's jury charges. The court instructed that in determining whether there was a defect in the car when it was sold to the motorist, the jury could consider the age of the car and the number of miles it had been driven. The motorist's theory underlying her claim for relief was presented some ten pages farther in Instruction No. 14.[19] Ideally, the instruction dealing with the motorist's theory of recovery should have immediately preceded that which focused on Ford's defense to the claim. Nonetheless, a judgment will not be disturbed because of a faulty sequential arrangement in the set of jury charges, if the court's instructions viewed as a whole correctly state the law applicable to the facts and the theories presented, and it is not apparent that the jury was misled or confused by the malplacement of the objectionable instruction.[20]

 Though the motorist timely excepted to Instruction No. 4, she failed to request that another instruction be given which would supply the desired "balancing effect" or cure the perceived deficiency. Nor did her counsel suggest a different sequential arrangement for the instruction thought to be objectionable. While Instruction No. 4 was perhaps inserted in the

**17.** Other jurisdictions have recognized this principle to be applicable in the strict liability context. See *Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059, 1067 [Alaska 1979]; *Litton Systems, Inc. v. Shaw's Sales and Service, Ltd.,* 119 Ariz. 10, 579 P.2d 48, 50 [Ariz.App.1978]; *Frazier v. Kysor Industrial Corp.,* 43 Colo.App. 287, 607 P.2d 1296, 1302 [1979]; *Aalco Mfg. Co. v. City of Espanola,* 618 P.2d 1230, 1231 [N.M. 1980]; see also Annot. 28 A.L.R.3d 943 [1969] and 97 A.L.R.2d 811 [1964].

**18.** 12 O.S.1981 § 78, *supra* note 9.

**19.** Instruction No. 14 gave the motorist's theory of recovery:

"You are therefore further instructed that if in the manufacture of the steering gear on Plaintiff's automobile certain metal particles capable of unexpectedly binding or locking up the steering mechanism were left in the gear housing, such would constitute an unreasonably dangerous defect and, if such defect caused or contributed to the cause of injury and damage to the Plaintiff, your verdict should be for the Plaintiff."

**20.** *Wooten v. Hall,* Okl., 442 P.2d 334, 337 [1968]; *Kimery v. Public Service Co. of Oklahoma,* Okl., 622 P.2d 1066, 1072 [1981]; see also, *Teegarden v. Dahl,* 138 N.W.2d 668, 681 [N.D.1965].

wrong sequential position vis-a-vis the other charges given, we cannot say that the jury was misled or that it might have reached a different verdict but for the malplacement.[21] Viewing the jury instructions as a whole, we find them free from reversible error.

## IV

## ERROR IN JUDGMENT FOR THE DEALER ON HIS DEMURRER TO THE MOTORIST'S EVIDENCE

Lastly, Ford and the dealer contend that the Court of Appeals erred in reversing the trial court's judgment on the dealer's demurrer to the motorist's evidence. They assert that the issue here is whether an "innocent party" in the chain of distribution may be held vicariously liable when the responsible manufacturer is before the court and a judgment against the dealer would add nothing to the protection of the motorist.

■■■ Because of the dealer's co-extensive liability,[22] the trial court clearly erred when it rendered judgment for the dealer on his mid-trial demurrer to the evidence, although it ruled that the proof adduced by the motorist was prima facie sufficient against Ford. While we are urged here that the dealer be held exempted from the purview of its co-extensive liability because Ford, the financially solvent manufacturer charged with having been responsible for the defect, is before the court, we leave the tendered question unsettled.[23] As the trial court's judgment for Ford must stand—and it, for the reasons discussed later, operates to exonerate the dealer *ex lege*—we need not pause here to consider the dealer's argument for a case-law exemption of "innocent" suppliers from strict liability.

■■■ Where, as here, a defect is said to be attributable solely to the manufacturing process rather than to some conduct in the distribution system, a distributor's liability may be termed vicarious.[24] The legal relation occupied by a distributor-defendant

**21.** When objectionable instructions are placed under scrutiny of appellate review, the test of prejudice is the probability that, *but for* the offending instruction—or in this case, but for the defective arrangement—the jury might have reached a different verdict. *Teague v. United Truck Service,* Okl., 499 P.2d 380, 383 [1972]; *Kimery v. Public Service Co. of Oklahoma, supra* note 20 at 1072.

**22.** *Kirkland v. General Motors Corporation,* Okl., 521 P.2d 1353, 1360 [1974]; *Moss v. Polyco, Inc.,* Okl., 522 P.2d 622, 626–627 [1974]; *Dewberry v. LaFollette,* Okl., 598 P.2d 241, 242 [1979].

The courts have offered various rationales for holding non-manufacturer-suppliers to the same liability standard as manufacturers: (1) The supplier is an integral part of the overall marketing enterprise and receives an economic benefit from placing the defective article in the stream of commerce. *Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 [1964]; *Moss v. Polyco, Inc., supra* at 626. (2) By holding a supplier liable, the consumer is protected in the event the manufacturer is beyond the jurisdiction of the court, insolvent or for some other reason cannot be subjected to liability. *Vandermark v. Ford Motor Co., supra; Kirkland v. General Motors Corp., supra.* (3) Under the theory of "risk spreading", the non-manufacturer can insure himself against products liability judgments and pass the cost of the insurance along to the public, thereby spreading the expense of products liability among the public in general. *Escola v. Coca Cola Bottling Co. of Fresno,* 24 Cal.2d 453, 150 P.2d 436, 441 [1944] (Traynor, J., concurring); Prosser, The Assault Upon the Citadel, 69 Yale L.J. 1099, 1121 [1960]. (4) The non-manufacturer may be in a position to exert pressure on the manufacturer to produce a safer product. *Vandermark v. Ford Motor Co., supra* at 171–172; *Moss v. Polyco, Inc., supra* at 672 and (5) The non-manufacturer can shift his loss to the manufacturer by an indemnity action. *Litton Systems, Inc. v. Shaw's Sales and Service, Ltd.,* 119 Ariz. 10, 579 P.2d 48, 50 [Ariz.App.1978].

There are at least two states—Massachusetts and Delaware—that have held the Uniform Commercial Code warranty provisions are the exclusive remedy in products liability cases. *Back v. Wickes Corp.,* 375 Mass. 633, 378 N.E.2d 964 [Mass.1978]; *Swartz v. General Motors Corp.,* 375 Mass. 628, 378 N.E.2d 61 [Mass.1978]; *Cline v. Prowler Indus.,* 418 A.2d 968 [Del.1980].

**23.** See in this connection, Leete, Caught In The Middle: The Need For Uniformity In Products Liability Statutes Affecting Non-Manufacturer Sellers, 18 Wake Forest L.Rev. 997, 998, 1009 [1982].

**24.** Vicarious liability is imposed by law when one person is made answerable for the actionable conduct of another. *Nadeau v. Melin,* 260 Minn. 369, 110 N.W.2d 29, 34 [1961].

vis-a-vis the manufacturer-defendant is here analogous to that between principal and agent or master and servant. When the principal and agent are both sued in an action predicated on the alleged negligence of the agent, for which the principal may be liable under the doctrine of respondeat superior, and no act of independent or concurrent negligence by the principal is either charged or shown, a judgment in favor of the agent, when final, operates *ex lege* to exonerate the principal.[25]

A retrial of this claim *solely* against the dealer appears precluded not only by an analysis based on vicarious liability, but also by one which would assume that *each* of the two defendants—Ford and its dealer alike—owed a *separate and nondelegable duty* to market a safe product.[26] The *common basis* for tort liability of both defendants was Ford's alleged breach of its duty. The car's defect was attributed *solely* to Ford's manufacturing process. As Ford defended by denying the flaw's presence, the verdict in its favor constituted *a negation that the defect existed.* Because Ford's alleged breach clearly was a *sine qua non* of the dealer's own liability for marketing an unsafe car, *Ford's exoneration also served to absolve the dealer.*

The motorist's sole theory for relief against the dealer was strict liability in tort. She neither alleged nor proved any conduct by the dealer which caused or contributed to the presence of the offending defect in her car. As we find no reversible error in the judgment for Ford, it must be allowed to stand. Because our decision in favor of the manufacturer exonerates the dealer by operation of law, the trial court's mid-trial error in rendering judgment for

the dealer is of no avail to the motorist and cannot inure to her benefit.

The Court of Appeals' opinion is vacated and the trial court's judgment affirmed.

DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

SIMMS, C.J., concurs in Parts I, II and III and concurs in judgment as to Part IV.

WILSON and KAUGER, JJ., dissent.

**25.** *Chicago, R.I. & P. Ry. Co. v. Reinhart,* 61 Okl. 72, 160 P. 51, 52 [1916]; *Consolidated Gas Utilities Co. v. Beatie,* 161 Okl. 71, 27 P.2d 813 [1933]; *Apache Gas Co. v. Thompson,* 177 Okl. 594, 61 P.2d 567, 568 [1936]; *Shell Petroleum Corp. v. Wilson,* 178 Okl. 355, 65 P.2d 173, 174 [1936]; *Mid-Continent Pipeline Co. v. Crauthers,* Okl., 267 P.2d 568, 571 [1954]; *Missouri, Kansas & Texas Railroad Co. v. Stanley,* Okl., 372 P.2d 852, 857 [1962]; *Vaughn v. Texaco, Inc.,* Okl. App., 631 P.2d 1334, 1337 [1981].

**26.** One who owes a nondelegable duty to another cannot escape liability for its performance by engaging an independent contractor, and, in such cases, the rule that the hirer is not liable for actionable conduct of an independent contractor will not be applied. *Shell Pipe Line Corp. v. Curtis,* Okl., 287 P.2d 681, 685 [1955]; *Allied Hotels, Limited v. Barden,* Okl., 389 P.2d 968, 971 [1964].