Grayson A. PORTER and Sun Electric Corporation, a corporation, Plaintiffs in Error,

v.

NORTON–STUART PONTIAC–CADILLAC OF ENID, a co-partnership composed of Sam Norton, Jr., and Stanley B. Stuart, Defendant in Error.

No. 39829.

Supreme Court of Oklahoma.

Jan. 26, 1965.

Rehearing Denied July 6, 1965.

Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for plaintiffs in error.

Otjen, Carter, Huddleston & Otjen, Enid, for defendant in error.

JACKSON, Vice Chief Justice:

This indemnity action by Norton-Stuart Pontiac-Cadillac of Enid, as plaintiff, against Grayson Porter and Sun Electric Corporation, as defendants, followed the out-of-court settlement of $12,750.00 of a prior action for damages for $98,000, filed against them by Frank Smith. Of the $12,750 settlement, Norton-Stuart contributed $6,000, and in this action seeks to recover from Sun Electric that sum plus counsel fees and costs. At the time of the prior settlement, with Smith, the parties executed a stipulation reserving without prejudice for future determination the question of indemnity between the parties. Judgment of the trial court in the indemnity action was for Norton-Stuart, and defendants appeal.

The record before us shows that in 1957, Norton-Stuart sent letters to owners of Pontiac automobiles in the Enid vicinity, inviting them to appear at a designated time for a free "Service Clinic" to be held at their place of business. It said that "members of the Pontiac factory service organization" would give each automobile a "complete check over from bumper to bumper". In response to this letter, Frank Smith appeared at the proper time to have his automobile checked. Present for the purpose of conducting the "clinic" were Norton-Stuart mechanics, experts from the Pontiac Division of General Motors Corporation, and Mr. Grayson Porter, representing Sun Electric Corporation. Arrangements for Mr. Porter to be present had been made between Sun Electric and Norton-Stuart. It appears that his purpose was two-fold: (1) to demonstrate the use of an instrument or machine manufactured by Sun Electric called an oscilloscope and (2) to attempt to sell such an instrument to Norton-Stuart. Norton-Stuart had arranged a sort of "assembly line" operation, with different phases of the checking being done in different stalls. One such stall had been set aside for the use of Porter, and during the day Porter had been using the oscilloscope on automobiles brought in by Norton-Stuart customers, and had been instructing Norton-Stuart mechanics in its use. However, no Norton-Stuart mechanics were involved in the events leading to the injury of Smith.

Smith's automobile had been completely checked before noon with the exception of the oscilloscope operation, and he was told by the shop foreman that "they would finish it right after lunch". Smith testified that he returned at 1:00 P.M. and:

"* * * I came in at the front and started through the door between the front and the shop, and when I opened the door the car was sitting right in front of the door, with the hood up. * * *

"Well, it turned out to be my car; I didn't know whose car it was at the time, and just as I started to go around it, why it took off,—I mean,—you know, —it just took off real quick and knocked me down and ran over me."

He testified briefly with regard to the extent of his injuries, and said "* * * I sued everybody that was involved; that was the only way to find out who was liable".

Mr. Taylor, the shop foreman, was a witness to the accident. He testified that the Smith automobile was in Porter's stall "right in front of those double doors that go into the show room floor". He was standing behind the car, talking to a customer, when he heard the tires spin and slip on the floor; he turned and saw the car

go through the doors into the show room; he saw Porter on the left side of the car with one foot on the floor and one foot inside the car. He had previously told Porter to go ahead on Smith's car (Norton-Stuart mechanics had not returned from lunch at that time).

Porter testified that just prior to the accident, he had attached "the two leads" to the car. He had also attached a "throttle holder" to the carburetor linkage for the purpose of making the motor run at a higher speed. With regard to the starting of the car motor, his testimony was in part as follows:

"* * * I simply reached in *over* the steering wheel and checked the gear *around* the steering wheel, turned the ignition key, and then I had withdrawn my arm and started to get back on the floor, and—

"Q. Well, let me interrupt you * *.

"*    *    *    *    *    *

"Q. All right, sir, and then in going to the ignition, did you go *over* the steering wheel column, or *under* the steering wheel column?

"A. I reached *around*,—well, I guess you would say *under*, because that was the nearest way that you could reach the key." (Emphasis supplied in all cases above)

Earlier Porter had testified as follows:

"Q. Could you have even reached around there in a standing position such as Mr. Taylor stated he saw you in, to have gotten your hand down in there?

"A. I don't believe you could have reached it at all; you would have hit the gear shift lever." (Emphasis supplied.)

In fairness, it must be said that in other testimony, Porter unequivocally stated that he reached "under" instead of "over", and denied that he touched the gear selector lever, or "gear shift", at all after starting the car.

The Smith car was a 1956 model Pontiac with an automatic transmission. The gear selector lever, or "gear shift", extended outward to the right from the steering wheel column. The ignition switch was also to the right of the steering wheel column. The mechanical arrangement of the gears was such that in order to move the gear selector lever from the "neutral" position to the "drive" position, a downward movement was necessary. The trial court's judgment in this case rests upon a conclusion that, after starting the motor, Porter accidentally moved the gear selector lever downward from the "neutral" position to the "drive" position.

With regard to the mechanical condition of the car, there was testimony that it was so designed that when properly adjusted, the motor would start only when the gear selector lever was in the "park" or "neutral" positions. Taylor, the shop foreman, and two of the General Motors factory service representatives who were present helping with the service clinic, testified that shortly after Smith had been taken to the hospital, they examined the Smith automobile and conducted certain tests upon it. They found nothing wrong with it and were unable to make the motor start when the gear selector lever was in any position except "park" or "neutral". These three men all qualified as experts, and all three testified in effect that in their opinion, the sudden forward lurch of the Smith automobile while the motor was running at high speed was caused by Porter's accidental movement of the gear selector lever into the "drive" position.

It was the position of Norton-Stuart that under these facts, it was only secondarily liable in the prior damage action, and that the proximate cause of the accident was the negligence of Sun Electric Corporation and its admitted agent, Grayson Porter; and that it was therefore entitled to be indemnified in the amount of its contribution to the settlement plus counsel fees and costs.

It was the position of Sun Electric that Norton-Stuart made the contribution purely

as a volunteer, and that in addition to settling any liability that might have existed against it under the doctrine of respondeat superior, it had also settled a possible liability for primary negligence of its own, consisting of negligence in failing to maintain reasonably safe premises, and failure to warn Smith, its invitee, of an allegedly dangerous condition.

It may be noted at this point that in his petition in the prior damage action, Smith did not allege that Norton-Stuart and Sun Electric were joint tort-feasors, and that the only specific acts of negligence alleged were the affirmative acts of Porter. In other words, in the prior action, Smith sought to subject Norton-Stuart and Sun Electric to liability solely under the doctrine of respondeat superior. He alleged in effect that, as to him, Porter was the agent of both Sun Electric and Norton-Stuart. This agency was admitted by Sun Electric but denied by Norton-Stuart.

No case is cited in the briefs in which this court has dealt directly with a right of indemnification where the same rested upon an implied, as opposed to an express, contract of indemnity; however, Sun Electric does not deny that, in a proper case, such a right exists. The rule is stated as follows in 27 Am.Jur. Indemnity, Sec. 18:

> " * * * one constructively liable for a tort is generally held entitled to indemnity from the actual wrongdoer, regardless of whether liability is imposed on the person seeking indemnity by statute or by rule of the common law, and irrespective of the existence of an express contract to indemnify. Accordingly, it has been stated that a person who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter, whether contractual relations exist between them or not."

To the same general effect, see 42 C.J.S. Indemnity § 21.

It may be noted that a right of indemnification has often been sustained even as between joint tort-feasors. See 42 C.J.S. Indemnity § 27b, and cases cited in footnotes thereunder. One of the exceptions to the general rule denying indemnity as between joint tort-feasors arises where the one claiming indemnity " * * * was only technically or constructively at fault, *as from a failure to perform some legal duty*, and the negligent or wrongful act of the party from whom indemnity is sought was the primary or proximate cause of injury". (Emphasis supplied). Sec. 27b, supra.

█ Substantially the same idea is stated as follows in an annotation not precisely in point at 38 A.L.R. 566.

> " * * * Where two parties are jointly liable in respect of a tort, one of them for the reason that he is the actual wrongdoer, and the other for the reason that the tort constituted a violation of a positive duty, the latter is entitled to recover from the former the amount he has been compelled to pay as damages for the injury. The rationale of this rule is that the latter party is chargeable merely with 'constructive fault', and is consequently not in pari delicto with the former. In this point of view the applicability of the rule is negatived, wherever it appears that the party seeking indemnity was himself guilty of affirmative misconduct which was a proximate cause of the injury in question."

█ Under this view of the law, which we believe to be sound, it is immaterial that Norton-Stuart might have been negligent in failing to maintain safe premises or failing to warn its invitee unless such failure was a proximate or contributing cause of the injury. Under the facts in this case, such negligence, consisting merely of "failure to perform some legal duty" cannot be said to be the "primary or proximate cause of the injury". It is well settled that "The proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the inju-

ry; if the negligence complained of *merely furnishes a condition* by which the injury was possible and *a subsequent act caused the injury*, the existence of such condition is not the proximate cause of the injury" (emphasis supplied). Cheatham v. Van Dalsem, Okl., 350 P.2d 593. "The proximate cause of an event must be understood to be that which in the natural and continuous sequence, *unbroken by any independent cause*, produces that event and *without which that event would not have occurred.*" (Emphasis supplied). Mathers v. Younger, 177 Okl. 294, 58 P.2d 857. Applying these tests, the negligence, if any, of Norton-Stuart in failing to maintain safe premises or failing to warn its invitee cannot be said to be the proximate cause of Smith's injury; obviously, regardless of Norton-Stuart's alleged primary negligence, the "efficient" and sole cause of the accident was the act of Porter in moving the gear selector from "neutral" to "drive", and without this independent and intervening cause, the accident would not have occurred.

■ We do not understand that Sun Electric denies that Norton-Stuart was liable to Smith under the doctrine of respondeat superior. Under the facts we have summarized and the findings of the trial court, such a position would be untenable. In the brief, Sun argues that " * * * Norton-Stuart did have, by virtue of its relationship to Frank Smith, who was an invitee on its premises, and to whom it owed the duty of maintaining reasonably safe premises, an interest in settling as it did, and is therefore not entitled to indemnification from * * * " Sun Electric or Porter. However, Sun Electric has cited no authority for the proposition that merely because Norton-Stuart had "an interest in settling as it did", it is not entitled to indemnity.

■ Sun Electric also argues that " * * * this settlement and the relationship of the parties to the litigation commenced by Smith must be considered, not in retrospect nor on the basis of the find-

ings and judgment of the trial court, but on the basis of the possibilities which faced Norton-Stuart at the time it contributed towards settlement". In this connection we are invited, in effect, to disregard the facts as developed during the trial of the indemnity action, and to consider only the three "contingencies", or possible judgments, which, according to Sun Electric, *might* have been rendered *if* the personal injury action had gone to trial.

We know of no reason, and none is cited in the briefs, why Norton-Stuart's right of indemnity should hinge on mere possibilities instead of facts as developed upon judicial inquiry.

■ So far as the relationships of the parties are concerned, it is clear that *as to Smith*, Porter, whose actual negligence caused the accident, was the agent, servant or employee of Norton-Stuart. His presence on the premises was authorized by Norton-Stuart and he was doing the work which Norton-Stuart had offered to Smith. At the time of the accident, he was working on the Smith automobile at the express direction of the Norton-Stuart shop foreman. So far as Smith was concerned, the right of control over Porter rested with Norton-Stuart. Norton-Stuart was therefore liable to Smith under the doctrine of respondeat superior.

However, *as between Norton-Stuart and Sun Electric*, Porter was clearly the agent, servant or employee of Sun Electric. He was present for the purpose of demonstrating Sun Electric equipment, and attempting to sell it. This agency was admitted by Sun Electric in its pleadings in the indemnity action. Being a corporation, Sun Electric could act only through its agents, servants or employees, and therefore the act of Porter was literally the act of Sun Electric. If, for instance, Smith had not been on the premises when Porter caused the automobile to lurch forward, and the injury had been confined to damage to the property of Norton-Stuart, there can be no doubt that Sun Electric would have been

liable to Norton-Stuart under the doctrine of respondeat superior.

We hold that under the facts in this case, Norton-Stuart has a right to indemnity from Sun Electric.

No question is raised as to the right of Norton-Stuart to recover counsel fees and costs.

The judgment of the trial court is affirmed.

HALLEY, C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur.

JOHNSON, J., dissents.