2001 OK CIV APP 29

**Leonard LAPKIN, M.D., Defendant/Third–Party Plaintiff/Judgment Assignor,**

**Raphael Nevin Pino, incapacitated adult, by and through his Guardian, Darla Lynn Pino; Darla Lynn Pino, individually, and Angel–Lena Pino, a minor, by and through her Natural Guardian and Next Friend, Darla Lynn Pino, Plaintiffs/Judgment Assignees/ Appellees,**

v.

**GARLAND BLOODWORTH, INC., d/b/a Bloodworth & Associates; Garland Bloodworth, an individual, and John Alberts, an individual, Third–Party Defendants/Appellants.**

No. 94,302.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 3, 2000.

Rehearing Denied Dec. 1, 2000.

Certiorari Denied Feb. 8, 2001.

Derek S. Casey, Hutton & Hutton, For Plaintiffs/Judgment, Assignees/Appellees, Wichita, KS.

John Tucker, For Third–Party, Rhodes, Heironymous, Defendants/Appellants, Jones,

Tucker & Gable, Garland Bloodworth, Inc. Tulsa, OK, and Garland Bloodworth.

William K. Osmond, Lawrence R. Murphy, Jr., For Third–Party, Robinett & Osmond, Defendant/Appellant, Tulsa, OK, John Alberts.

KENNETH L. BUETTNER, Judge:

¶ 1 Third–Party Defendants/Appellants Garland Bloodworth, Inc., d/b/a Bloodworth & Associates (Law Firm), Garland Bloodworth,[1] and John Alberts (collectively Attorneys) appeal from summary judgment granted in favor of Defendant/Third–Party Plaintiff/Judgment Assignor Leonard Lapkin, M.D. in Lapkin's unjust enrichment claim. Because we find no substantial issue of material fact upon the record presented, and because we find Lapkin was entitled to judgment as a matter of law, we affirm summary judgment. However, we reverse and remand for modification of two issues: the finding that Attorneys are jointly and severally liable and the date on which pre-judgment interest began accruing.

¶ 2 Raphael Nevin Pino (Raphael) was incapacitated due to a surgical mistake by Lapkin. Darla Lynn Pino (Darla), individually and as guardian for Raphael, an incapacitated adult, and as guardian and next friend of Angel–Lena Pino, a minor, entered into a settlement agreement with Lapkin for $2.5 million (first settlement agreement) August 7, 1995. The first settlement agreement, including the attorney fee agreement, was approved by the District Court of Canadian County as part of guardianship proceedings involving Raphael. As part of a contingency fee agreement with Law Firm, negotiated by Alberts, the proceeds from the first settlement were divided equally between Law Firm and Darla. Law Firm paid Alberts a salary, but also had an agreement in the Pino case to divide the fee with ⅔ going to Bloodworth and ⅓ going to Alberts.

¶ 3 The first settlement agreement provided that $45,000 would be distributed to Michael Pino, Raphael's son, and $2,455,000.00 would be applied to the purchase of a structured annuity with the balance to be divided

---

1. The record indicates that Garland Bloodworth died April 14, 2000.

among the releasers.[2] Lapkin's insurer, Physicians Liability Insurance Company (PLICO) issued a check for $2,455,000.00 August 11, 1995. The check was made payable to Darla, Raphael, and Alberts. Law Firm deposited the check in its trust account August 11, 1995. Also on August 11, 1995, Bloodworth approved a cashier's check from the trust account in the amount of $1,077,500.00 payable to Darla.[3] Bloodworth also on that date wrote a check to Alberts, from the trust account, in the amount of $349,166.66 which included the notation "Pino settlement w/ PLICO Co–Counsel Fee." Bloodworth wrote three $200,000 checks to himself from the trust account, each with the notation "Pino settlement, Co Counsel Fee." Bloodworth also transferred $300,000 to himself from the trust account for a certificate of deposit with the notation Darla Pino settlement. Finally, a $98,333.34 check was written from the trust account to Law Firm with the notation "transfer to operating Pino."

¶ 4 After the first settlement agreement was approved in Canadian County, Darla discharged Law Firm and hired new counsel to challenge the Canadian County District Court's jurisdiction. In Case No. 88,064, filed October 28, 1996, the Oklahoma Supreme Court assumed original jurisdiction in the case and held the Canadian County proceedings void for failure to appoint counsel to represent Raphael, as required by *In re Guardianship of Deere*, 1985 OK 86, 708 P.2d 1123. Included in the Supreme Court's ruling is an order that the "friendly suit" approving the first settlement agreement and the underlying guardianship were void.

¶ 5 Darla was then appointed guardian of Raphael in Payne County on November 8, 1996 in proceedings in which appointed counsel represented Raphael. Darla then filed a medical malpractice lawsuit in Tulsa County District Court against Lapkin, another doctor, and Hillcrest Medical Center. Darla also sought to have the first settlement agreement rescinded based on the Supreme Court's decision that it was void. Darla returned her portion of the first settlement

agreement proceeds to Lapkin. The Tulsa County District Court granted partial summary judgment on the issue of recission October 27, 1998.

¶ 6 Lapkin then filed a third-party petition against Attorneys seeking return of the remaining proceeds of the first settlement agreement under the theory of unjust enrichment. The Tulsa County District Court granted summary judgment to Lapkin on the unjust enrichment claim September 27, 1*. The trial court awarded Lapkin $1,077,500.00 plus 6% interest from August 11, 1995 to the date of judgment, plus post-judgment interest pursuant to 12 O.S.1991 § 727. Attorneys were held jointly and severally liable for these amounts. In the order granting summary judgment to Lapkin, the trial court expressly determined that there was no just reason for delay and directed the filing of a final judgment in Lapkin's third-party action. It is from that summary judgment that Attorneys appeal. Lapkin has assigned his judgment to Darla.

¶ 7 Summary judgment is proper where there is no substantial controversy of material fact and one party is entitled to judgment as a matter of law. *Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, 894 P.2d 1077, 1079; 12 O.S.1991 Ch. 2.App., Rule 13. The parties do not dispute the facts of the instant case as described above.

> The term 'unjust enrichment' describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable. It is a recognized ground for recovery in Oklahoma. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another.

*N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 1996 OK CIV APP 92, 929 P.2d 288, 295 (cert. denied). The undisputed facts of this case are that Attorneys represented Darla

---

2. The record does not reveal whether the structured annuity was ever purchased.

3. This amount represented half of the $2,500,000.00 settlement after deducting $45,000 for Raphael's son Michael and deducting $300,000.00 for "escrow Hillcrest lien."

pursuant to a contingency agreement. The settlement agreement through which they obtained a recovery for Darla was held void by the Oklahoma Supreme Court. Accordingly, there is no longer any "recovery" made pursuant to the contingency agreement between Attorneys and Darla. It is therefore contrary to equity and good conscience for Attorneys to retain the contingency fee after the contingent event fell through.[4] Accordingly, in addition to no substantial controversy of material fact, we find that Lapkin was entitled to judgment as a matter of law and that summary judgment was proper.

¶8 However, we granted the request of Attorneys for the parties to file briefs and we consider their arguments. Attorneys assert first that the court erred in granting summary judgment to Lapkin on the unjust enrichment claim because it was PLICO, and not Lapkin, who paid the attorney fees called for in the first settlement agreement. We note that the check issued by PLICO was issued on behalf of Lapkin, its insured. Therefore, regardless of the actual source of the money, it came "from" Lapkin to compensate for his negligence. We agree with Lapkin that "a defendant's right is to have a cause of action prosecuted against him by the real party in interest, but his concern ends when a judgment for or against the nominal plaintiff would protect him from any action upon the same demand by another." *Oklahoma Wildlife Federation, Inc. v. Nigh,* 1972 OK 144, 513 P.2d 310, 314. Further, ". . . the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter." 44 Am.Jur.2d § 1795. This statement indicates that the insurer and insured stand in the same shoes and that the insured is the party who has rights against a claimant in the first place. We therefore conclude that Lapkin had standing to prosecute the claim for unjust enrichment, despite the fact that PLICO issued the check.

¶9 Attorneys next assert that the trial court erred in determining that Lapkin's claim was not barred by the applicable stat-

ute of limitations. The parties agree that the applicable statute of limitations in the instant case was three years, citing 12 O.S.1991 § 95(2); *Sholer v. State, ex rel. Dept. of Public Safety,* 1995 OK 150, 945 P.2d 469, 475. Attorneys assert that the settlement agreement was held void *ab initio,* so that Lapkin's cause of action for unjust enrichment began to run on August 7, 1995, the date the first settlement agreement was approved by the Canadian County District Court. Attorneys have cited no authority in support of this contention. Arguments unsupported by authority will not be considered. Okla.Sup.Ct.R. 1.11(k)(1). Nevertheless, "(a) statute of limitations begins to run from the time the cause of action accrues. A cause of action accrues when the litigant could maintain for the first time the cause of action to conclusion." *Roberson v. Paine-Webber, Inc.,* 1* OK CIV APP 17, 998 P.2d 193, 196–7. Until the Supreme Court declared the first settlement agreement void on October 28, 1996, Lapkin could not have maintained a cause of action for unjust enrichment. We therefore agree with Darla that the earliest date on which the limitations period could have expired in the instant case is October 28, 1*. Lapkin filed his third-party petition against Attorneys August 25, 1998, well within the applicable limitations period.

¶10 Alberts next contends that the trial court erred in holding Attorneys jointly and severally liable for return of the entire attorney fee amount. Alberts contends that it is unfair to hold him liable for the whole attorney fee amount while he received only one-third of that amount as his fee pursuant to his agreement with Law Firm. Darla contends that Attorneys were joint venturers so that joint and several liability may be applied. *See Armor v. Lantz,* 207 W.Va. 672, 535 S.E.2d 737 (2000), *citing* Charles W. Wolfram, Modern Legal Ethics, § 5.6.6 at 238 (1986). A joint venture is defined by *Martin v. Chapel, Wilkinson, Riggs, & Abney,* 1981 OK 134, 637 P.2d 81, "as an association of two or more persons to

---

4. See *Musser v. Musser,* 1998 OK CIV APP 13, 955 P.2d 744, 746 (court may order attorneys to return fees if judgment, upon which fees were awarded, is reversed on appeal.)

carry out a single business enterprise with the objective of realizing a profit."

The essential criteria for ascertaining the existence of a joint venture relationship are: (1) joint interest in property, (2) and express or implied agreement to share profits and losses of the venture and (3) action or conduct showing cooperation in the project.... The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each co-adventurer of something promotive of the enterprise.

*Id.* at 85, 637 P.2d 81. A joint venture has been found to exist where attorneys have agreed to share fees. See *Duggins v. Guardianship of Washington,* 632 So.2d 420 (Miss.1993); *Fitzgibbon v. Carey,* 70 Or.App. 127, 688 P.2d 1367 (1984); *Floro v. Lawton,* 187 Cal.App.2d 657, 10 Cal.Rptr. 98 (1960). Where the relationship between attorneys "is one of more nearly equal responsibility, authority, and profit sharing, it may fit the legal description of a joint venture ... permitting joint and several liability." *Armor, supra.* However, under the undisputed facts of the instant case, Alberts was simply an employee of Law Firm with an agreement to share the fee in the Pino matter. Alberts was not responsible for any losses from the representation. Unjust enrichment requires restitution of funds based on equity. It is inequitable to hold Alberts liable for restitution of the full $1,077,500.00 when Alberts was only unjustly enriched in the amount of $349,166.66. We therefore reverse and remand for modification of the summary judgment on the unjust enrichment claim by holding Attorneys severally liable for the amounts by which they were unjustly enriched at the expense of Lapkin.

¶ 11 Attorneys next assert that the court erred in computing the amount of pre-judgment interest awarded. Pre-judgment interest may be awarded where the damages are certain and the right to such damages vests on a date certain. 23 O.S.1991 § 6. In the instant case, the trial court awarded pre-judgment interest beginning August 11, 1995, the date on which the check was received for the first settlement agreement. We agree with Attorneys that Lapkin's right to the damages did not vest at that time. Attorneys do not suggest the proper date for the accrual of pre-judgment interest. We find that Lapkin's right to recover the settlement proceeds vested on October 28, 1996, the date on which the Supreme Court held that the first settlement agreement was void. On that date, the amount of damages was certain and beginning on that date, Lapkin could have prosecuted his claim for unjust enrichment to conclusion. We accordingly reverse and remand for modification of the summary judgment to reflect that pre-judgment interest should run from October 28, 1996.

¶ 12 Alberts asserts that the trial court erred in awarding judgment against him as an employee of Law Firm. Alberts alleges that the doctrine of "unjust enrichment does not apply where, as a result of mistake or fraud between the original parties to a transaction, money is paid by one of them to a Third–Party who receives the money in good faith without knowledge of the mistake or fraud," *citing Associates Discount Corp. v. Clements,* 1958 OK 22, 321 P.2d 673, 677; *Merchants' Insurance Co. of Providence v. Abbott,* 131 Mass. 397 (1881); *Knapp v. First National Bank & Trust Co.,* 154 F.2d 395 (10th Cir.1946). Alberts asserts he was merely an employee who received money in good faith without knowledge of the mistake or fraud between Darla and Law Firm. The check which paid Alberts his fee included the notation that it was for the Pino settlement. Further, Alberts negotiated 1) the fee agreement with Darla (and signed the contract on behalf of Law Firm), 2) Alberts' own fee arrangement with Law Firm, and 3) the first settlement agreement. It is impossible to conclude on these undisputed facts that Alberts received the check for $349,000 in good faith and without knowledge of the source of the funds.

¶ 13 Law Firm next asserts that the fee agreement between it and Darla precludes the doctrine of unjust enrichment. Attorneys also contend that any enrichment they sustained was not "unjust" because it was a fee for their services in obtaining the first settlement agreement. Attorneys would be correct if the fee was an hourly fee based on their services. However, the fee they received was contingent on attorneys obtaining a recovery for Darla. After the first

settlement agreement was declared void and the first settlement agreement was rescinded, Darla had no recovery and there was nothing on which to base a contingent fee. For this reason, we likewise hold that, simply because Darla and Attorneys were bound by contract, that fact alone does not preclude a finding of unjust enrichment. This court has held that an express contract between parties does not preclude recission and a finding of unjust enrichment where equity demands such a result. *Roberson v. PaineWebber, Inc.,* 1* OK CIV APP 17, 998 P.2d 193, 200. Attorneys seek to retain money obtained under the fee contract after the first settlement agreement, which was effectively Attorneys' performance under the fee contract, was declared void and rescinded. Equity requires the return of the fees in the instant case.

¶ 14 Attorneys lastly contend that the trial court erred in not enforcing the first settlement agreement. Attorneys suggest that the Tulsa County District Court should have disregarded the Oklahoma Supreme Court's ruling that the first settlement agreement was void as well as the Tulsa County District Court's order rescinding the first settlement agreement. Attorneys have not presented authority for this contention of error and it is without merit. The invalidity of the first settlement agreement was *res judicata* at the time of the instant proceedings on the unjust enrichment claim.

¶ 15 Although the facts are undisputed and Darla Lapkin was entitled to judgment as a matter of law, we find that the trial court erred in holding Attorneys jointly and severally liable for the restitution and in establishing the date on which pre-judgment interest began accruing. Accordingly, though the trial correctly entered summary judgment in favor of Lapkin on his third-party claim for unjust enrichment, we remand for proceedings consistent with this opinion.

¶ 16 AFFIRMED IN PART/REVERSED IN PART AND REMANDED.

¶ 17 JONES, P.J., concurs; GARRETT, J., dissents.