2006 OK CIV APP 48

**CATERPILLAR INC., and Caterpillar Paving Products Inc., Plaintiffs/Appellees/Counter–Appellants,**

v.

**TRINITY INDUSTRIES, INC., Defendant/Appellant/Counter–Appellee.**

**No. 100,258.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 13, 2005.

Rehearing Denied Jan. 24, 2006.

Certiorari Denied April 10, 2006.

James A. Jennings, III, Carrie P. Hoisington, Linda G. Kaufmann, Jennings, Cook & Hoisington, PLLC, Oklahoma City, OK and W.T. Womble, Womble Cotellesse & Howell, Houston, TX, for Plaintiffs/Appellees/Counter–Appellants.

Clyde A. Muchmore, Mary H. Tolbert, Crowe & Dunlevy, Oklahoma City, OK, for Defendant/Appellant/Counter–Appellee.

Opinion by JANE P. WISEMAN, Judge.

¶1 In this action for indemnification, defendant Trinity Industries, Inc., appeals the trial court's judgment on a jury verdict in favor of plaintiffs. Caterpillar Inc. and Caterpillar Paving Products Inc. (collectively, Caterpillar). For the following reasons, we affirm.

## BACKGROUND

¶2 The genesis of this appeal is a 1994 highway construction accident that injured two workers. The workers were operating a Caterpillar PR–1000C cold planer, a large machine that breaks up and removes asphalt and other surfaces from roads. The machine's "teeth" were located inside a large cutter housing assembly unit which one could access by hydraulically raising a twelve-by-four-foot, 1,500–pound door. While the workers were under the machine changing equipment and making repairs, the large door fell on them, causing injuries.

¶3 The workers sued Caterpillar for negligence, manufacturer's product liability, and implied warranty. Initially, the trial court granted summary judgment to Caterpillar in one of the lawsuits, because the worker had failed to use a safety bar intended to secure the door. In 1997, in appeal number 88,841, this Court reversed and remanded, holding that facts were in dispute regarding whether proper use of the safety bar would have prevented the door from falling.

¶4 We noted in that opinion that there was evidence of a defect in the manufacture of the machinery. The heavy door was held open only by a hydraulic cylinder, whose hydraulic "ram" had separated, allowing the door to fall. We stated: "The failure of the hydraulic ram was likely due to stress fracture caused by bending forces resulting from an improper assembly of a hinge bracket during manufacture." According to the workers' expert, the machine's center hinge bracket on the cutter housing door was larger than the size specified by Caterpillar, eliminating the necessary clearance between the bracket and another part of the machine. This resulted in fatigue cracks and the stress fracture.

¶5 Caterpillar identified Trinity as the manufacturer and supplier of the bracket. In 1998, Caterpillar notified Trinity of the accident and lawsuits, and requested it participate in settlement negotiations. Trinity refused. Caterpillar then notified Trinity that it planned to proceed with negotiations

and to sue Trinity for contribution or indemnification.

¶ 6 In January 1999, Caterpillar settled for $1,800,000 the lawsuit that was the subject of the appeal. In February 2000, it settled the other lawsuit for $250,000.

¶ 7 Later in 2000, Caterpillar filed its petition against Trinity for indemnification for the settlements plus attorney's fees and costs. Caterpillar asserted that the hinge bracket was manufactured by Trinity and did not conform to Caterpillar's specifications, and that this was the primary basis for Caterpillar's liability to the workers.

¶ 8 As a general rule, a party is entitled to indemnity where it settles a claim rather than taking it to judgment when it shows the indemnitor was legally liable and the settlement was reasonable and in good faith. 41 Am.Jur.2d *Indemnity* § 46 (1995). Additionally, where the indemnitor has notice of the claim and refuses to defend, the indemnitee (the party settling the claim) must show it was potentially liable, as opposed to showing actual liability. *Id.*

¶ 9 In 2002, the trial court applied these principles in refusing to dismiss Caterpillar's indemnity theory. The trial court found Caterpillar gave Trinity adequate notice of settlement negotiations and an opportunity to participate; Caterpillar's decision to settle and the settlement amounts were reasonable; and Caterpillar had proved it was potentially liable to the workers. The trial court concluded Caterpillar could prevail on its indemnity claim if it proved by the greater weight of the evidence that its potential liability resulted from a part supplied by Trinity.

¶ 10 Trial took place in 2003. The jury found in favor of Caterpillar, awarding it $2,050,000 in damages for settlement of the workers' lawsuits and $1,021,103 for attorney's fees and expenses incurred in those cases. The trial court entered judgment on the verdict, adding $10,885 in costs and $871,237 in pre-judgment interest, for a total judgment of almost $4,000,000. Trinity appeals.

## STANDARD OF REVIEW

■ ¶ 11 Where any competent evidence reasonably tending to support a jury verdict exists, "and no prejudicial errors are shown in the trial court's instructions to the jury or rulings on legal questions presented during trial, the verdict will not be disturbed on appeal." *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 2000 OK 55, ¶ 3, 11 P.3d 162, 166.

## ISSUES ON APPEAL

### I. REAL PARTY IN INTEREST

■ ¶ 12 Trinity first asserts the trial court erred in allowing Caterpillar's indemnification claim to go to the jury, because the settlement proceeds were paid by Caterpillar's insurance company, and not by either of the Caterpillar entities named as plaintiffs. Therefore, Trinity asserts, Caterpillar lacked "standing" to seek indemnification because it did not suffer a loss. The trial court resolved this matter against Trinity by treating the argument as a real party in interest defense that Trinity waived by failing to raise in a timely manner.

¶ 13 The trial court reached the correct result, regardless of whether the issue was waived. As Caterpillar points out, the applicable rule on this matter was expressed in *Lapkin v. Garland Bloodworth, Inc.*, 2001 OK CIV APP 29, 23 P.3d 958, in which a doctor settled a malpractice claim against him. His insurer paid the proceeds, which were split between the patient and her lawyers. The settlement was voided by the Oklahoma Supreme Court. The patient's guardian returned her portion of the proceeds, but her lawyers refused to return their share. The doctor then sued the lawyers for unjust enrichment to recover the remaining proceeds.

¶ 14 The trial court granted summary judgment in the doctor's favor. The lawyers argued this was error because the settlement had been paid by the doctor's insurer, not the doctor. The Court of Civil Appeals rejected the argument, stating:

We note that the check issued by [the insurer] was issued on behalf of [Dr.] Lap-

kin, its insured. Therefore, regardless of the actual source of the money, it came "from" Lapkin to compensate for his negligence. We agree with Lapkin that "a defendant's right is to have a cause of action prosecuted against him by the real party in interest, but his concern ends when a judgment for or against the nominal plaintiff would protect him from any action upon the same demand by another." *Oklahoma Wildlife Federation, Inc. v. Nigh*, 1972 OK 144, 513 P.2d 310, 314. Further, ". . . the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter." 44 Am.Jur.2d § 1795. This statement indicates that the insurer and insured stand in the same shoes and that the insured is the party who has rights against a claimant in the first place. We therefore conclude that Lapkin had standing to prosecute the claim for unjust enrichment, despite the fact that [the insurer] issued the check.

*Id.* at ¶ 8, 23 P.3d at 962.

¶ 15 The *Oklahoma Wildlife* case cited by *Lapkin* was later applied in *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, 969 P.2d 337. There the plaintiff alleged the defendants had failed to pay for slop oil that it and other gas plant operators had collected. The defendants asserted the plaintiff lacked standing because it had assigned its rights to a successor. The Oklahoma Supreme Court first rejected the idea that this was properly a standing issue, holding it actually involved the real party in interest doctrine. Then it rejected the argument on its merits, applying *Oklahoma Wildlife*, noting, "Neither [defendant] claims that any judgment against them here might not protect them from further liability to others arising out of the same acts." *Id.* at ¶ 24, 969 P.2d at 344.

¶ 16 Similarly, Trinity does not claim, or even express a concern, that the judgment Caterpillar received fails to protect Trinity from a further action by Caterpillar's insurance company or any other entity. Trinity was therefore not entitled to summary judgment. While we have chosen to analyze the matter slightly differently than the trial court did, we agree with the trial court's result, and find no error.

## II. THE EVIDENCE—CATERPILLAR'S ALLEGED LIABILITY

¶ 17 Indemnity is available where "one party has a primary liability or duty that requires that party to bear the whole of the burden as between certain parties." *Thomas v. E–Z Mart Stores, Inc.*, 2004 OK 82, ¶ 20, 102 P.3d 133, 139. No right of indemnity exists between joint tortfeasors against each other. *Id.* at ¶ 22, 102 P.3d at 140. The right exists when one who is only constructively liable to the injured party and is in no manner responsible for the harm is compelled to pay damages for the tortious act of another. *Braden v. Hendricks*, 1985 OK 14, ¶ 11, 695 P.2d 1343, 1349. Trinity asserts the evidence established as a matter of law that Caterpillar "contributed to the liability," defeating the right to indemnification.

¶ 18 Trinity argues that, if Caterpillar had a potential liability such that the case had some settlement value, even with Trinity out of the case, Caterpillar would not be entitled to a jury determination of indemnity. Under Oklahoma law, a claim of indemnity is not barred merely because a party has an interest in settling. *See Porter v. Norton–Stuart Pontiac–Cadillac of Enid*, 1965 OK 18, ¶ 19, 405 P.2d 109, 114. The proper inquiry here is what caused the accident. It is immaterial that a party seeking indemnity might have been negligent in some way, unless that failure is a proximate or contributing cause of the accident. *Id.* at ¶ 18, 405 P.2d at 113.

¶ 19 Much of the evidence concerning the accident focused on the machine's center hinge brackets. According to one expert witness, the brackets should have been no longer than 3.5 inches, and the bracket in this case was 3.9 inches. The additional height caused friction with another part of the machine, leading to metal fatigue, stress fractures, and the failure of the hydraulic ram, causing the door to fall on the workers.

¶ 20 Trinity argued it was only responsible for manufacturing the cutter housing assem-

bly, and Caterpillar was responsible for designing the cold planer and assessing the clearances needed to keep the bracket from contact with other parts of the machine. Trinity presented evidence indicating Caterpillar was at least partly to blame for the accident through its design, assembly, and inspection methods.

¶ 21 If the existence of such evidence were sufficient to bar a claim for indemnity, we would agree with Trinity. But the issue is not whether there is any evidence to support Trinity's argument. The issue is whether there is any evidence to support the jury's verdict.

¶ 22 In that regard, Caterpillar's expert testified the cause of the accident was a manufacturing defect in the hinge brackets. He specifically testified the brackets were oversized and not manufactured according to Caterpillar's specifications. He further testified the machine had four to five thousand pieces and that Caterpillar could not be expected to inspect every piece.

¶ 23 The jury was thoroughly instructed regarding indemnity. It could certainly have chosen to determine that Caterpillar was at least partly responsible for the accident. It chose not to do so. Because competent evidence exists supporting that decision, we will not interfere with its verdict.

## III.  THE EVIDENCE—TRINITY'S ALLEGED LIABILITY

¶ 24 Trinity also asserts that it is entitled to judgment as a matter of law because Caterpillar failed to prove Trinity manufactured the cutter housing assembly, which included the hinge bracket. There was no definitive piece of identification evidence introduced by either side. Unquestionably, Trinity manufactured some assemblies for Caterpillar that were placed in cold planers, but the part involved was not stamped with the manufacturer's name. Trinity admitted it could not prove who made the bracket, but it presented evidence indicating the assembly placed on the particular machine involved in the accident could have been manufactured by another company and taken by Caterpillar from existing inventory.

¶ 25 Trinity asserts "not one scintilla of evidence" was produced showing any assembly it manufactured was actually placed in the particular machine. To adopt Trinity's argument would be to disregard Caterpillar's evidence which included the testimony of three Caterpillar employees that only Trinity was used as a supplier of the cutter box housing assembly. These witnesses were admittedly Caterpillar employees, but the jury was entitled to consider their testimony and credibility. Additionally, the evidence included some purchase orders indicating Caterpillar purchased assemblies from Trinity at times coinciding with the completion of the particular machine involved in the accident.

¶ 26 The sufficiency of the evidence to sustain a judgment is determined on appeal in light of the evidence tending to support it, together with every reasonable inference deducible from that evidence, rejecting all conflicting evidence adduced by the opposing party. *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 2000 OK 55, ¶ 3, 11 P.3d 162, 166. In the instant case, the jury could reasonably infer that Trinity made the part in question. It was not bound to reach that decision, but its verdict is within the evidence properly considered at trial. Under our standard of review, that is sufficient to affirm.

¶ 27 In its brief-in-chief, Trinity noted that Caterpillar admitted destroying almost all the invoices for the cutter housing assembly, even though the invoices could have conclusively established the identity of the bracket manufacturer. In its reply brief, it argues that Caterpillar should therefore not have been permitted to establish Trinity's involvement by inference.

¶ 28 Caterpillar filed a motion to strike this issue on the grounds that Trinity failed to raise the issue of spoliation at the trial court level or in the brief-in-chief. Trinity filed a response, asserting it had raised the matter "simply to illuminate" its argument that the evidence was insufficient as a matter of law to establish that Trinity manufactured the cutter housing assembly.

¶ 29 We deny the motion to strike, but we reject Trinity's proposition of error. The

parties presented evidence to the jury regarding the destruction of documents by both Caterpillar and Trinity. The jury was entitled to consider the evidence in reaching its decision. As noted above, the jury resolved the issue of Trinity's involvement, as it was entitled to do.

## IV. SUFFICIENCY OF CATERPILLAR'S NOTICE

¶ 30 Trinity next asserts Caterpillar was not entitled to indemnity because it gave Trinity untimely and insufficient notice of the workers' lawsuits. While there is little Oklahoma law on this point, a good summary of the general rule on this point is found in *In re Cooper Manufacturing Corp.,* 131 F.Supp.2d 1238 (N.D.Okla.2001). Essentially, the indemnitee—the party settling a claim who then seeks indemnity—is required to show proof of its *actual liability* unless it notifies the putative indemnitor of a potential settlement of the underlying litigation, thereby providing the indemnitor with an opportunity to approve the settlement, participate in settlement negotiations, or assume the defense of the underlying claim. If the indemnitee does provide sufficient notice and opportunity to object, the indemnitee need only show *potential liability*. This "potential liability exception" may apply after a court weighs the policy interests in encouraging settlements against considerations of fairness to a putative indemnitor. *Id.* at 1252–53.

¶ 31 Trinity does not dispute Caterpillar showed potential liability, but it does assert the notice it was given was untimely and insufficient, meaning Caterpillar should have been required to show actual liability. The trial court rejected Trinity's argument, holding that Trinity had waived the untimeliness issue and had failed to prove the notice was insufficient.

¶ 32 As to the timeliness of notice, the undisputed facts show the accident occurred in 1994. The workers' lawsuits were filed in 1995. Evidence of the problem with the center hinge bracket was available by 1996. Up to this point, Caterpillar had not given notice to Trinity. In 1997, Caterpillar's motion for summary judgment in one of the lawsuits was granted. Later that year, this Court reversed that judgment. Certiorari was denied in May 1998, and Caterpillar notified Trinity soon after, in early July 1998. About six months later, Caterpillar settled one lawsuit, and then settled the other lawsuit about a year after that.

¶ 33 While there is no bright line for determining how much time must pass before notice is untimely, Trinity points out that several years of litigation took place before it received notice. While that amount of time might very well be enough to conclude notice was untimely, the instant case's facts are unusual in that a summary judgment was granted. At that point, Caterpillar's legal liability did not exist, pending the appeal.

¶ 34 That was the situation in *Daugherty v. Farmers Coop. Ass'n,* 1989 OK CIV APP 89, 790 P.2d 1118. The defendant—the party seeking indemnity—was sued in 1978. Its motion for summary judgment was granted. In 1984, the Oklahoma Supreme Court reversed the summary judgment as to one theory. Only then did the defendant give notice it was seeking indemnity. While years had passed between the lawsuit and the notice, the defendant argued it had no valid action for indemnity until the Supreme Court's reversal, because up until that point, the trial court's summary judgment left the defendant free from any liability upon which to base indemnity. *Id.* at ¶ 5, 790 P.2d at 1119.

¶ 35 The trial court disagreed, and granted the indemnitor summary judgment based on the Uniform Commercial Code's notice provisions. Another division of this Court reversed, holding the UCC's notice provisions could not be interposed as a defense to a claim for indemnity. *Id.* at ¶ 7, 790 P.2d at 1119–20. The Court did not specifically approve the defendant's argument, but it could be said the Court implicitly did so, given its result.

¶ 36 While *Daugherty* is certainly not dispositive, the fact remains that Caterpillar received summary judgment, meaning its legal liability did not exist at that point. In fact, if Caterpillar had settled for the $1,800,000 while it had the summary judg-

ment in hand, and then sought indemnity, Trinity could have argued the settlement was unreasonable because Caterpillar was free from liability at that point. Once the appellate process concluded, and Caterpillar was no longer free, it unquestionably gave timely notice. Even if Trinity timely raised this argument—and the trial court found it had not—we conclude the trial court correctly rejected the argument.

¶ 37 Ultimately, the "indispensable element" of the notice Caterpillar was required to provide and that Trinity was entitled to receive was "[n]otice sufficient to give the indemnitor a meaningful opportunity to defend.... The primary concern is fairness to the indemnitor. A formal tender of defense is not required, rather notice and an opportunity to participate is all that is necessary." *Cooper*, 131 F.Supp.2d at 1253. We conclude Trinity had that opportunity.

¶ 38 As to the sufficiency of notice, a meeting between the parties took place in July 1998, six months before the first settlement was reached. There is evidence in the record, including an affidavit from a Caterpillar lawyer in attendance, that Trinity was specifically informed about the accident, the lawsuits, and the problem with the bracket. At the meeting, Trinity received an invitation to participate in settlement negotiations. Trinity declined to do so and continued to take that position after receiving additional urging from Caterpillar to participate. There was evidence in the record for the trial court to conclude notice was sufficient, and we see no reason to disturb that decision.

¶ 39 We conclude Trinity received timely notice and a meaningful opportunity to participate, and we therefore reject its argument.

## V. TRINITY'S MOTION FOR MIS-TRIAL—EXPERT WITNESS'S TESTIMONY

¶ 40 Trinity next asserts the trial court erred in denying its motion for mistrial based on the testimony of a witness. The witness was a jury consultant who had arranged a mock trial for Caterpillar after the summary judgment in its favor was reversed

and remanded in one of the workers' lawsuits.

¶ 41 In lengthy sidebar discussions with the lawyers early in the jury consultant's testimony, the trial court, relying on its previous *in limine* ruling, stated that the witness could testify that the mock jurors believed Caterpillar could be liable to the workers because of a manufacturing defect in the cold planer machine. The trial court ruled the witness could not testify that the mock jurors believed the specific cause of Caterpillar's potential liability was the bracket manufactured by Trinity. It ruled that testimony either pinpointing a particular part of the cold planer, such as the hinge, or pinpointing who was responsible for the defect would invade the province of the jury as to why the machine failed and who made the part that failed.

¶ 42 Caterpillar's lawyer briefed the witness about the trial court's ruling. On the stand, the witness testified that before the mock trial he and Caterpillar's lawyers believed that the workers' own negligence might lead to Caterpillar winning the lawsuits. When asked about their belief following the mock trial, the witness answered:

> Common belief was that Caterpillar would not prevail on manufacture [*sic*] of product liability. In other words, that a jury would likely find that the cutter housing door was defective.

¶ 43 At that point, Trinity objected and moved for a mistrial. The trial court excused the jury. After considerable discussion in chambers, the trial court denied the motion, and then instructed the jury to disregard the question and answer. Trinity asserts it was error to deny its motion for mistrial, because the witness violated the trial court's ruling and placed the blame for the accident on Trinity.

¶ 44 Whether to grant a mistrial is a matter for the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. *Jordan v. General Motors Corp.*, 1979 OK 10, ¶ 4, 590 P.2d 193, 195. "To reverse a trial court on the ground of abuse of discretion it must be found that the trial judge made a

clearly erroneous conclusion and judgment, against reason and evidence." *Abel v. Tisdale,* 1980 OK 161, ¶ 20, 619 P.2d 608, 612.

¶ 45 The parties agree that, at a minimum, the witness misspoke by not limiting his remarks to general terms. But we cannot agree with Trinity that the single remark entitled it to a mistrial. From the start of the trial, the jury knew the door was involved in the accident, for the simple reason that the undisputed evidence showed the door fell on the workers, causing their injuries. The witness did not mention the hinge bracket or that Trinity might be its manufacturer. To accept Trinity's argument would require us to presume that, from the witness's statement that a jury was likely to find the door was defective, this jury would conclude that it should also find that the problem lay solely with the door, that the door's problem was due to the bracket, and that the bracket was solely the responsibility of Trinity.

¶ 46 This case is far afield from *Gabus v. Harvey,* 1984 OK 4, 678 P.2d 253, which the parties discussed with the trial court, where the Supreme Court held it was reversible error to allow a police officer in an auto negligence case to give his opinion about the cause of the accident. There the testimony went directly to an ultimate issue. In the instant case, the statement came in the middle of a complicated trial spread over more than a week and did not go directly to the ultimate issue. We cannot say the trial court's decision was an abuse of discretion.

## VI. PREJUDGMENT INTEREST

¶ 47 Finally, Trinity asserts the trial court erred in granting Caterpillar prejudgment interest on the verdict. Title 23 O.S. 2001 § 6 states:

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day....

¶ 48 Trinity asserts that the amounts Caterpillar paid to settle the lawsuits were subject to the trial court's determination that they were reasonable, and if an amount must

be determined to be "reasonable," it cannot be said to be "certain" as Section 6 requires.

¶ 49 We reject this argument. First, the damages Caterpillar recovered were "damages certain." Caterpillar sought and was awarded the specific, certain amounts paid in settlement of the workers' claims.

¶ 50 Second, a statute Trinity relies on is inapplicable. By its own terms, 12 O.S.2001 § 832(D) applies to contribution claims. The theory Caterpillar prevailed on was indemnity, not contribution. Trinity has failed to show the statute applies.

¶ 51 Third, the case law Trinity relies on is distinguishable. "Under section 6, the damages must be liquidated to be recoverable." *Pierce Couch Hendrickson Baysinger & Green v. Freede,* 1997 OK 33, ¶ 36, 936 P.2d 906, 914. Trinity relies on language in that case that, if a fact finder must determine the reasonableness of the amounts sought in a claim, the amounts are not capable of certainty and therefore are not recoverable under the prejudgment interest statute. Trinity argues that because indemnity requires the settlement obtained by the indemnitee to be reasonable, there likewise can be no recovery under the statute.

¶ 52 The parties in the instant case did not dispute the amount of damages. It stands to reason that if both sides agree on a number, that number is "certain."

¶ 53 The facts were different in *Pierce Couch.* There the amount of damages was disputed. The case involved a law firm and a client who rejected a settlement and lost the underlying case. The law firm billed the client for costs and fees, and the client asserted the amounts billed were not reasonable. The Supreme Court held that the law firm was entitled to less than what it billed the client, and because the courts were required to resolve the dispute and determine what amount was reasonable, the fees were not capable of ascertainment, meaning prejudgment interest was unavailable.

¶ 54 There is no such dispute in the instant case. Trinity does not assert it ever argued or presented any evidence that the settlement amounts were too high. Trinity vigorously disputed its liability to Caterpillar,

but it did not present any evidence that the amounts paid in settlement—which Caterpillar then sought from Trinity—were unreasonable. If a fact finder must weigh conflicting evidence to determine the precise amount of damages due to a plaintiff, then a court cannot grant prejudgment interest. *Bird Constr. Co. v. Okla. City Hous. Auth.*, 2005 OK CIV APP 12, ¶ 29, 110 P.3d 560, 568. No conflicting evidence was presented in the instant case for the fact finder to weigh. The amounts sued for were certain, and Caterpillar was entitled to prejudgment interest.

## VII. CATERPILLAR'S COUNTER—APPEAL

¶ 55 Caterpillar also pled contribution as an alternative theory of recovery. In 2002, the trial court held that while Caterpillar could present its indemnity theory to the jury, it could not pursue its alternative contribution theory. The trial court reasoned that this theory turned on a matter of law: whether Caterpillar and the two workers intended the settlements to represent full compensation. The trial court held they did not so intend, meaning the workers were not precluded from suing Trinity, and Caterpillar could not pursue a claim for contribution.

¶ 56 After Trinity appealed the judgment on the jury verdict, Caterpillar filed a counter-petition-in-error, asserting the trial court erred by failing to submit the contribution theory to the jury. Because we have resolved Trinity's appeal in favor Caterpillar, it is unnecessary to resolve the counter-appeal, and we decline to do so.

## CONCLUSION

¶ 57 The trial court's judgment on the jury verdict is AFFIRMED.

REIF, P.J., concurs, and GABBARD, J., concurs specially.

GABBARD, J., specially concurring:

¶ 1 I write separately because of my concern about the use of trial simulations or mock trials as **evidence** in the case.

¶ 2 Mock or simulated trials increasingly are being used in civil and criminal pretrial preparation. Patterson, A.H. "Testing Your Case: How Trial Simulations Work," *The Practical Litigator*, Vol. 1, No. 4, July 1990, pg. 37–42; 75 Am.Jur.2d *Trial* § 42 (1991). Like focus groups and public opinion polls, they can be valuable pretrial tools.

¶ 3 However, allowing the introduction of mock trial results into evidence is fraught with danger and should be generally condemned. Few, if any, standards exist to ensure that trial simulations accurately reflect the jury composition, evidence, and presentation of the relevant case. Few controlled studies exist to verify their predictive ability. Absent standardization, additional study and peer review, this evidence clearly cannot satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

¶ 4 Moreover, such evidence has a potential for prejudice which outweighs its probative value. *See* 12 O.S.2001 § 2403. It raises the possibility that jurors will defer to the result of the mock trial jury, instead of deciding the case on the evidence before it.

¶ 5 Without standardization and scientific review of the predictive reliability of mock trials, there seems little reason to allow its admission into evidence. If a mock trial cannot be shown to be a reliable predictor of a trial's outcome, it should not be allowed to prove justification for a decision to settle a lawsuit for $1.8 million, any more than it should be allowed to prove justification for refusing to pay an insurance or other claim. To hold otherwise opens up a grave potential for abuse.

¶ 6 Moreover, routine use of mock trials will unnecessarily increase the cost of pre-litigation expenses, and cause an additional financial burden on those least able to afford it. Future **potential** litigants may well believe that participating in a mock trial, or conducting their own mock trial for rebuttal purposes, is a necessary pre-litigation expense.

¶ 7 For these reasons, I would find that the introduction of the mock trial result was improper. However, in view of the trial court's admonishment, it was harmless error under the facts and circumstances presented.

Therefore, I concur in the majority's conclusion.